JEFFERY SPAULDING, APPELLEE AND CROSS-APPELLANT, V.
ALLIANT FOODSERVICE, INC., AND SENTRY INSURANCE A
MUTUAL COMPANY, APPELLANTS AND CROSS-APPELLEES.

689 N.W.2d 593

Filed November 16, 2004. No. A-04-064.

100

Charles L. Kuper and Paul F. Prentiss, of Timmermier, Gross & Prentiss, for appellants.

Leanne A. Gifford and Raymond R. Aranza, of Brown & Brown, P.C., L.L.O., for appellee.

IRWIN, MOORE, and CASSEL, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Alliant Foodservice, Inc. (Alliant), and Sentry Insurance a Mutual Company (Sentry) appeal the affirmance by a three-judge review panel of an award of the Nebraska Workers' Compensation Court to Jeffery Spaulding. Alliant and Sentry argue that Spaulding was willfully negligent, which negligence would prohibit him from obtaining an award. Spaulding cross-appeals, contesting the review panel's affirmance of the trial court's denial of his request for a waiting-time penalty and attorney fees as well as the review panel's denial of his request for attorney fees on appeal. We find that because the trial court found the actions of Spaulding that resulted in his injuries to be unintentional, Spaulding was not willfully negligent. We further find that Spaulding is not entitled to a waiting-time penalty and attorney fees at the trial court level, due to the uncertainty in this area of

law that existed prior to this opinion. Spaulding is, however, entitled to attorney fees for his appeal to the review panel, because there was no reduction in the amount of his award on appeal.

## II. BACKGROUND

Spaulding worked as an "order selector" for Alliant. This job entailed "[p]icking product to be shipped out to [Alliant's] customers [i]n a timely manner." To accomplish this, Spaulding utilized a high rise machine to access racks on which the products for the orders were stored. These racks were approximately 20 feet high. Spaulding was required to wear a safety harness while on the high rise machine. The harness attached to the machine with a lanyard to prevent him from falling. When Spaulding had to get off of the high rise machine, he had to unhook his lanyard and then reattach it when getting back on the machine. This happened about 30 times during each shift.

On December 13, 2001, Spaulding was injured while "picking an order." Using the high rise machine, Spaulding was retrieving product from the top rack when "more than one case" fell against him and knocked him off the high rise machine. Spaulding fell approximately 20 feet to the ground and landed on his hands and knees. Having sustained multiple fractures to his left leg and a fracture to his right shoulder, Spaulding was taken to a hospital in an ambulance. Spaulding's shoulder was operated on, and he spent a total of approximately 4 weeks in hospitals and a care center. Spaulding subsequently received physical therapy, used crutches or a wheelchair for about 3 months, used crutches only for another 3 months, and continued to use a walking stick as of the date of trial.

At the time of his fall, Spaulding's lanyard was not attached to the high rise machine. Alliant has a safety rule that states, "No Associate should be elevated above a height of 4 feet without being in an approved safety cage and/or wearing the proper fall protection equipment." At trial, Spaulding testified that at the time of his fall, although his lanyard was not attached to the high rise machine, he was under the belief that it was properly attached.

On April 22, 2002, Spaulding filed a petition in the Nebraska Workers' Compensation Court, seeking medical benefits, disability benefits, vocational rehabilitation, a waiting-time penalty, and

attorney fees. Alliant and Sentry admitted that Spaulding had been injured, but answered that Spaulding's injuries were a result of his willful negligence. A trial was held on January 27, 2003. The trial court found that Spaulding was not willfully negligent and that "[a]t most, the evidence demonstrated momentary inadvertence and ordinary negligence." The court then awarded Spaulding medical and disability benefits, but denied Spaulding's request for a waiting-time penalty and attorney fees.

Alliant and Sentry appealed the trial court's award to a three-judge review panel. Spaulding cross-appealed the trial court's denial of his request for a waiting-time penalty and attorney fees. The review panel affirmed the trial court's award "in all respects." Specifically, the review panel found that although Spaulding violated a safety rule promulgated by Alliant, the review panel "[could not] say as a matter of law that forgetting to attach the lanyard to the high-rise machine is intentional willful negligence required by [Neb. Rev. Stat. §] 48-127 [(Reissue 1998)]." The review panel also stated that it "[could not] say the trial judge was clearly wrong in entering an award under the facts of [the] case." With regard to the cross-appeal, the review panel denied Spaulding's request for a waiting-time penalty and attorney fees, stating that the case "present[ed] questions of law, which have not been decided by the Nebraska Court of Appeals or the Nebraska Supreme Court."

This appeal now follows.

### III. ASSIGNMENTS OF ERROR

Alliant and Sentry assign, restated, that the review panel's affirmance was error because the trial court erred in (1) failing to find that Spaulding's conduct constituted a reckless indifference to his own safety, (2) failing to determine whether Spaulding had a bona fide excuse for violating a known safety rule, and (3) failing to find that Spaulding was willfully negligent, pursuant to Neb. Rev. Stat. § 48-102 (Reissue 1998) and Neb. Rev. Stat. § 48-151(7) (Cum. Supp. 2002). On cross-appeal, Spaulding argues that the review panel erred in affirming the trial court's denial of his request for a waiting-time penalty and attorney fees and in failing to award him attorney fees for the appeal to the review panel.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004); *Morris v. Nebraska Health System*, 266 Neb. 285, 664 N.W.2d 436 (2003); *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003); *Vega v. Iowa Beef Processors*, 264 Neb. 282, 646 N.W.2d 643 (2002).

■ In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing. *Ludwick, supra*; *Morris, supra*; *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002).

■ Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Ludwick, supra*; *Morris, supra*; *Zavala, supra*; *Frauendorfer, supra*. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Ludwick, supra*; *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003); *Morris, supra*; *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002); *Vega, supra*.

### 2. WILLFUL NEGLIGENCE

Alliant and Sentry's three assignments of error all relate to the trial court's determination that Spaulding was not willfully negligent. Neb. Rev. Stat. § 48-101 (Reissue 1998) provides:

When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee

was not willfully negligent at the time of receiving such injury.

Section 48-151(7) defines "willfully negligent" as "(a) a deliberate act, (b) such conduct as evidences reckless indifference to safety, or (c) intoxication at the time of the injury, such intoxication being without the consent, knowledge, or acquiescence of the employer or the employer's agent."

In *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000), the Nebraska Supreme Court reviewed the concept of the term "willfully negligent" as used in § 48-101 in the context of an employee's violation of a specific safety rule promulgated by an employer. After quoting the above-quoted statutes, the Supreme Court stated:

> In order to avoid liability on the basis that the employee was willfully negligent, an employer must prove a deliberate act knowingly done or at least such conduct as evidences a reckless indifference to the employee's own safety. . . . Mere negligence is not sufficient. The conduct of the employee must manifest a reckless disregard for the consequences coupled with a consciousness that injury will naturally or probably result. . . . Reckless indifference to safety means more than want of ordinary care. It implies a rash and a careless spirit, not necessarily amounting to wantonness, but approximating it in degree—a willingness to take a chance.

*Guico*, 260 Neb. at 718, 619 N.W.2d at 476 (citing *Collins v. General Casualty*, 258 Neb. 852, 606 N.W.2d 93 (2000), and *Krajeski v. Beem*, 157 Neb. 586, 60 N.W.2d 651 (1953)).

Particularly in regard to an employee's violation of a specific safety rule promulgated by an employer, the Supreme Court first referenced two cases in which it had determined whether an employee's conduct that was contrary to general principles of industrial safety constituted willful negligence. The Supreme Court quoted *Richards v. Abts*, 136 Neb. 741, 287 N.W. 199 (1939), in which it had found that willful negligence was not established because " '[t]he proof [was] lacking that the deceased deliberately, and of his own wilful negligence, failed to take any precaution which he had been taught . . . by his employer, or learned from his own experience.' " *Guico*, 260 Neb. at 719, 619 N.W.2d at 476. The Supreme Court then quoted *Moise v. Fruit*

*Dispatch Co.*, 135 Neb. 684, 283 N.W. 495 (1939), in which it had found that an employee's conduct did not constitute willful negligence because the employee "responded automatically to the desire to smoke and ignited the match 'without the volition or mental effort essential to the intentional wilful act of negligence contemplated by the language of the statute.' " *Guico*, 260 Neb. at 719-20, 619 N.W.2d at 477.

▪ The Supreme Court next cited 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 34.02 (2000), stating that "courts have generally not applied what [Professor Larson] characterizes as the 'wilful misconduct' defense in circumstances where unsafe conduct by an employee, while negligent or thoughtless, is not shown to be intentional or deliberate." *Guico*, 260 Neb. at 720, 619 N.W.2d at 477. The Supreme Court went on to state, " '[T]he general rule can be stated with confidence that the deliberate defiance of a reasonable rule laid down to prevent serious bodily harm to the employee will usually be held to constitute wilful misconduct, in the absence of . . . specific excuses.' " *Guico v. Excel Corp.*, 260 Neb. 712, 720, 619 N.W.2d 470, 477 (2000) (quoting 2 Larson & Larson, *supra*, § 34.03).

▪ The Supreme Court next addressed several factors discussed by Professor Larson as having been "considered in determining whether the violation of an employer's safety rule should disqualify a worker from [receiving] benefits, both under statutes which afford a general 'willful misconduct' defense and those which specifically provide a defense for safety rule violations." *Id.* The court summarized and restated the factors as follows:

(1) whether an employer has a reasonable rule designed to protect the health and safety of the employee, (2) whether the employee has actual notice of the rule, (3) whether the employee has an understanding of the danger involved in the violation of the rule, (4) whether the rule is kept alive by bona fide enforcement by the employer, and (5) whether the employee has a bona fide excuse for the rule violation.

*Id.* at 720-21, 619 N.W.2d at 477 (citing 2 Larson & Larson, *supra*, §§ 34 and 35).

▪ Alliant and Sentry argue that an analysis of these factors is determinative in all workers' compensation cases involving an employee who is injured as a result of violating an employer's

safety rule, regardless of whether the violation is intentional. Spaulding responds that the five factors need be applied only if the employee is first found not to have been merely negligent or thoughtless in violating the safety rule. We agree with Spaulding—the factors discussed in *Guico* apply to cases in which an employee has intentionally violated an employer's safety rule and consequently becomes injured. We find support for this conclusion both in *Guico* and in Larson's Workers' Compensation Law, upon which the Supreme Court relied in deciding *Guico*.

In *Guico*, the Supreme Court specifically stated that "courts have generally not applied . . . the 'wilful misconduct' defense in circumstances where unsafe conduct by an employee, while negligent or thoughtless, is not shown to be intentional or deliberate." 260 Neb. at 720, 619 N.W.2d at 477 (citing 2 Larson & Larson, *supra*, § 34.02). The Supreme Court also stated that for the wilful misconduct defense to apply, an employee's conduct "must manifest a reckless disregard for the consequences coupled with a consciousness that injury will naturally or probably result." *Id.* at 718, 619 N.W.2d at 476. Accord *Collins v. General Casualty*, 258 Neb. 852, 606 N.W.2d 93 (2000). The Supreme Court defined a reckless indifference to safety as "more than want of ordinary care. It implies a rash and a careless spirit, not necessarily amounting to wantonness, but approximating it in degree—a willingness to take a chance." *Guico, supra*.

In 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 34.01 at 34-2 (2004), Professor Larson states that the application of the willful misconduct defense "has been nothing like as broad as the term itself might lead one to expect. . . . [A]n analysis of the cases shows that the defense has been generally successful in only one narrow field, that of intentional violation of safety regulations." Professor Larson also states, "In most instances, the ground of rejection of the defense was the absence of 'wilfulness.' Usually the injured employee's action, although prohibited, was instinctive or thoughtless, rather than intentional and deliberate." *Id.*, § 34.02 at 34-5. Professor Larson adds, "A condition which has been repeatedly stressed is that the employee must understand the seriousness of the consequences attending violation of the safety rule, since otherwise the conduct can only be described as heedless rather than deliberate."

*Id.* at 34-8. Professor Larson further states, "[T]he defense has in practice been largely confined to the intentional violation of safety rules, including rules requiring use of safety devices." *Id.*, § 34.03 at 34-9.

In his discussion regarding what the Nebraska Supreme Court summarized into the five factors in *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000), Professor Larson states, "The idea that the employee's knowledge of the rule must be actual instead of constructive is a direct corollary of the requirement of 'wilfulness.' One cannot *deliberately* break a rule unless one in fact knows the rule exists." (Emphasis supplied.) *Id.*, § 35.02 at 35-5. Professor Larson also states, "[A] violation of an order, whether for purposes of the safety rule defense or the wilful misconduct defense, is not *intentional* unless the order itself is clear, and unless the order is plainly an order as distinguished from advice or caution." (Emphasis supplied.) *Id.* at 35-7.

All of these statements indicate that an employee's violation of an employer's safety rule must be intentional in order to be willfully negligent. We read *Guico* and Larson's Workers' Compensation Law to state that an employee's deliberate or intentional defiance of a reasonable rule will disqualify that employee from receiving benefits if (1) the employer has a reasonable rule designed to protect the health and safety of the employee, (2) the employee has actual notice of the rule, (3) the employee has an understanding of the danger involved in the violation of the rule, (4) the rule is kept alive by bona fide enforcement by the employer, and (5) the employee does not have a bona fide excuse for the rule violation. We do not read *Guico* to require that these factors be considered when an employee has accidentally violated a safety rule.

Alliant and Sentry assert that applying the five factors only if an employee intentionally violates a safety rule "turns the definition of 'willful negligence' on its head." (Emphasis omitted.) Reply brief for appellant at 8. They claim that such an approach causes "the definition of 'willful negligence' [to be] whittled down to two options, '(a) a deliberate act' and '(b) intoxication at the time of injury.'" *Id.* (citing § 48-151(7)). They then argue that an employer would need to prove only that an employee's

act was deliberate to prove willful negligence and that the five factors would never come into play. We find this unconvincing.

After quoting § 48-151(7), the Supreme Court in *Guico v. Excel Corp.*, 260 Neb. 712, 718, 619 N.W.2d 470, 476 (2000), stated, "As there is no contention that [the worker] injured himself deliberately or as a consequence of intoxication, the Workers' Compensation Court correctly focused upon whether [his] conduct at the time of his injury evidenced a reckless indifference to safety." We find that this statement indicates that "a deliberate act" as referenced in § 48-151(7) refers to an employee's deliberate injury of himself or herself. As such, an employee's violation of an employer's safety rule must fall within the category of "such conduct as evidences reckless indifference to safety," *id.*, in order to constitute willful negligence under § 48-151(7). If an employee's violation of a safety rule is intentional, the five factors discussed in *Guico* must be analyzed to determine whether the employee is disqualified from receiving benefits.

In the case at bar, Spaulding testified that at the time of his fall, he believed that his harness was correctly hooked up. Alliant and Sentry failed to put on any evidence to the contrary of Spaulding's testimony. In fact, they do not argue to this court that Spaulding intentionally violated Alliant's safety rule. Rather, they argue that Spaulding is not entitled to benefits because he did not have a bona fide excuse for violating the safety rule and that thus, his conduct was willfully negligent. This argument cannot be successful because Spaulding's rule violation was found by the trial court to be unintentional and the five factors in *Guico* are inapplicable.

Furthermore, the standard of review requires this court to give considerable deference to a trial court's determination of whether particular conduct amounted to willful negligence. *Guico, supra.* If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id.*; *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999). In the case at bar, the trial court determined that Spaulding's rule violation and subsequent accident were, at most, results of "momentary inadvertence and ordinary negligence." Spaulding testified that at the

time of his fall, he thought that his harness was correctly hooked up. This supports the trial court's determination that Spaulding's actions were not willfully negligent, and we cannot find that this determination was clearly wrong. Hence, we uphold the review panel's affirmance of the trial court's award.

### 3. Waiting-Time Penalty and Attorney Fees

On cross-appeal, Spaulding argues that the trial court erred in denying his request for a waiting-time penalty and attorney fees and that the review panel erred both in affirming the trial court's denial of a waiting-time penalty and attorney fees and in failing to award Spaulding attorney fees on appeal to the review panel. According to the Nebraska Supreme Court, Neb. Rev. Stat. § 48-125 (Cum. Supp. 2002) authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation. *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999); *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). Whether a reasonable controversy exists pertinent to § 48-125 is a question of fact. *McBee, supra; Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998); *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998). A reasonable controversy under § 48-125 may exist (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *McBee, supra; U S West Communications, supra; Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Mendoza, supra.*

In the case at bar, the trial court denied Spaulding's request for a waiting-time penalty and attorney fees, stating, "Several factors contribute to the existence of a reasonable controversy, including

but not limited to [Spaulding's] prior safety warning, his acknowledgment of the safety rules, his knowledge of a coworker's fall and injury and the simple fact that his lanyard was not hooked at the time of his fall." The review panel stated that Spaulding was not entitled to a reasonable attorney fee (and presumably a waiting-time penalty) because the "case [presented] questions of law, which have not been decided by the Nebraska Court of Appeals or the Nebraska Supreme Court." Both the trial court's and the review panel's orders reflect an analysis of the five factors as set forth in *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000).

We find that although no evidence exists on the record to support an opposite finding that Spaulding was willfully negligent, it appears as though there is confusion as to the law regarding willful negligence. Both the trial court and the review panel applied the factors set forth in *Guico* to determine whether Spaulding's violation of Alliant's safety rule constituted willful negligence, despite the fact that neither side argued that Spaulding intentionally violated the rule. Accordingly, we cannot find that it was error for the trial court to have denied Spaulding's request for a waiting-time penalty and attorney fees, and we uphold the review panel's affirmance of the trial court's decision.

 However, Spaulding is entitled to attorney fees for the appeal to the review panel. Section 48-125(1) provides, in pertinent part:

> If the employer files an application for review before the compensation court from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such review, and the Court of Appeals or Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in the Court of Appeals or Supreme Court.

In the case at bar, the review panel affirmed the award of the trial court "in all respects." Pursuant to § 48-125, Spaulding is thus entitled to an award of reasonable attorney fees for the appeal to the review panel, and the review panel erred in failing to award such fees.

## V. CONCLUSION

For the reasons stated above, we find that the trial court did not err in finding that Spaulding was not willfully negligent. We further find that the trial court did not err in denying Spaulding's request for a waiting-time penalty and attorney fees. However, the review panel did err in failing to award Spaulding attorney fees for his appeal to the review panel, because there was no reduction in Spaulding's award. Accordingly, we uphold the review panel's decision affirming the ruling of the trial court, but remand the case to the review panel with instructions to award attorney fees to Spaulding for his appeal to the review panel.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.