ESTATE OF FRANKLIN NORMAN LEE COE, ALSO KNOWN AS NORMAN COE, DECEASED, ET AL., APPELLANTS, V. WILLMES TRUCKING, L.L.C., ET AL., APPELLEES.

689 N.W.2d 318

Filed December 3, 2004.   No. S-03-1332.

Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellants.

Michael E. Sullivan, of Helmann & Sullivan, P.C., and Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

While Franklin Norman Lee Coe was driving a truck for his employer, Willmes Trucking, L.L.C. (Company), Coe fell asleep; he died in the resulting accident. After Coe's death, his estate and his two surviving dependents, Pamela Coe and Michael Coe (collectively the appellants), filed workers' compensation proceedings against the Company and its two members, Ronald Willmes and his wife, Sharon Willmes (collectively the appellees). The appellees alleged that the appellants could not recover because Coe had been willfully negligent. See Neb. Rev. Stat. § 48-101 (Reissue 2004). The appellees did not, however, carry workers' compensation insurance or an acceptable alternative as required by the Nebraska Workers' Compensation Act (Act). See Neb. Rev. Stat. § 48-145 (Reissue 2004). The appellants argued that the appellees' failure to carry workers' compensation insurance precluded them from raising willful negligence as a defense.

The trial judge disagreed with the appellants and ruled that Coe had been willfully negligent. A three-judge review panel affirmed. We conclude that the appellees' failure to carry workers' compensation insurance did not preclude them from raising willful negligence and that the compensation court did not err in finding that Coe had been willfully negligent.

## FACTUAL BACKGROUND

Coe worked as a truckdriver for the Company. The appellees are named as the Company's comembers in its articles of organization. The Company leased its trucks to Freedom Transportation (Freedom), which scheduled hauling jobs for the Company's trucks. Although Freedom scheduled the jobs, the Company's drivers retained the ability to turn down jobs. After a driver completed a trip, Freedom would issue a check to the Company. As his pay, Coe would receive 25 percent of the income that the truck had earned.

In addition to scheduling jobs, Freedom provided dispatching services and arranged for insurance on the Company's trucks. Ronald Willmes testified that he was under the impression that Freedom had also arranged for workers' compensation insurance. This was not correct, however, and it is undisputed that the Company did not carry workers' compensation insurance when the accident occurred.

On April 23, 2001, the day before his death, Coe picked the truck up at the Company sometime between 7:30 and 8 a.m. He then drove to West Point, Nebraska, where he picked up a load of soybean meal at about 11 a.m. Coe was to deliver the soybean meal to Rupert, Idaho. The most logical route from West Point to Rupert is to get on Interstate 80 south of West Point; continue on Interstate 80 through Nebraska, Wyoming, and into Utah; and then take Interstates 15 and 84 northwest to Rupert. Credit card charges for fuel indicate Coe took this route.

The accident occurred at about 1 a.m. on Interstate 80, just across the Wyoming-Utah border. The parties stipulated that Coe fell asleep while driving and that as a result, the truck left the road and overturned. Coe was pronounced dead upon his arrival at a local hospital.

When the accident occurred, Coe was in violation of a federal regulation meant to curb accidents caused by driver fatigue. Under the regulation, once a truckdriver has driven for 10 hours, the driver must rest for at least 8 consecutive hours. See 49 C.F.R. § 398.6 (2000). It was about 17 hours from the time that Coe picked up the truck until his death. Because of the miles that he traveled, it would have been impossible for Coe to have made more than a few brief stops.

Moreover, the record suggests that Coe had difficulty staying awake at night when he was driving. In an affidavit, his mother stated that in the late 1980's, after working late one night, Coe fell asleep while driving. His vehicle left the road and struck a concrete culvert. She also stated that Coe displayed an unusual propensity for falling asleep very quickly.

Coe's problems with late-night driving led both his mother and his brother to warn him that he was pushing himself too hard and getting too little sleep. These warnings came a few months

before the accident. In addition, Ronald Willmes testified that once or twice, he had told Coe to "slow her down."

## PROCEDURAL BACKGROUND

After Coe's death, the appellants commenced workers' compensation proceedings. In their petition, they named the Company as a defendant. In addition, they alleged that Ronald Willmes and Sharon Willmes, as the Company's comembers, were individually liable under Neb. Rev. Stat. § 48-145.01 (Reissue 2004). In their answer, the appellees alleged that Coe had suffered his injuries because of his own willful negligence and that therefore, the appellants could not recover.

The trial judge ruled that the appellees' failure to carry workers' compensation insurance did not preclude them from raising Coe's willful negligence as a defense. The trial judge further concluded that Coe had been willfully negligent and that therefore, the appellants could not recover. The court's review panel affirmed. We granted the appellants' petition to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

The appellants assign that the compensation court erred in (1) determining that the appellees were not barred from asserting willful negligence as a defense, (2) concluding that Coe was willfully negligent in driving an excessive number of hours in the 24 hours before his death, (3) failing to find that Sharon Willmes and Ronald Willmes were jointly and severally liable, and (4) failing to award the appellants benefits and funeral and medical expenses.

## STANDARD OF REVIEW

Under Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Veatch v. American Tool*, 267 Neb. 711, 676 N.W.2d 730 (2004).

■ The meaning of a statute is a question of law, and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003).

■ Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Collins v. General Casualty*, 258 Neb. 852, 606 N.W.2d 93 (2000).

## ANALYSIS

### WILLFUL NEGLIGENCE AS DEFENSE WHEN EMPLOYER FAILS TO CARRY WORKERS' COMPENSATION INSURANCE

The appellants argue that because the appellees failed to carry workers' compensation insurance, they could not raise willful negligence as a defense. The appellants' argument depends upon the interaction between Neb. Rev. Stat. §§ 48-102 and 48-103 (Reissue 2004).

Section 48-102 provides:

> In all cases brought under sections 48-101 to 48-108, it shall not be a defense (a) that the employee was negligent, unless it shall also appear that such negligence was willful, or that the employee was in a state of intoxication; (b) that the injury was caused by the negligence of a fellow employee; or (c) that the employee had assumed the risks inherent in, or incidental to, or arising from the failure of the employer to provide and maintain safe premises and suitable appliances, which grounds of defense are hereby abolished.

To better understand the purpose of § 48-102, a brief review of the common law before the adoption of the workers' compensation laws might be helpful.

■ Before workers' compensation laws became prevalent in the early 20th century, employees had to resort to common-law negligence actions to recover for injuries arising out of and in the course of employment. But three common-law defenses made it difficult, if not impossible, for injured employees to recover: (1) contributory negligence; (2) the fellow-servant rule, which prevented the employee from recovering if the employee's injury was caused by a fellow employee; and (3) assumption of the risk. See 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law

§ 2.03 (2004). Section 48-102 limits the ability of the employer to raise these three defenses in workers' compensation proceedings. Subsection (a) prevents the employer from raising contributory negligence unless the employee was intoxicated or willfully negligent, subsection (b) prevents the employer from raising the fellow-servant rule, and subsection (c) prevents the employer from raising assumption of the risk. Thus, in effect, § 48-102 eliminates the three common-law defenses from workers' compensation proceedings, preserving only the employee's willful negligence and intoxication as defenses which the employer may raise.

Section 48-103 provides that when an employer fails to carry workers' compensation insurance or one of its acceptable alternatives, "he or she loses the right to interpose the three defenses mentioned in section 48-102 in any action brought against him or her for personal injury or death of an employee." The appellants interpret § 48-103 to mean that when an employer fails to comply with the insurance requirements of the Act, the employer, in addition to not being able to raise the three common-law defenses, also loses the right to raise the two defenses preserved in § 48-102, i.e., willful negligence and intoxication.

There are two flaws in the appellants' interpretation of § 48-103 that cannot be reconciled with the language of the statute. First, under the appellants' interpretation of § 48-103, an employer who fails to carry workers' compensation insurance·or an acceptable alternative loses the right to interpose only *two defenses*, willful negligence and intoxication. But construing § 48-103 so that the employer loses two defenses is not consistent with the statute's language; it plainly states that an employer who has failed to carry workers' compensation insurance or an acceptable alternative loses the right to interpose "*three defenses*." We are required to give a statutory language its plain and ordinary meaning. See *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 635 N.W.2d 439 (2001). Construing "three defenses" to mean "two defenses" is the antithesis of that rule.

Second, the appellants' interpretation overlooks that § 48-102 is not the only section that refers to willful negligence. Three other sections in the Act explicitly make the employee's willful negligence a defense in workers' compensation proceedings. Section 48-101 provides, "When personal injury is caused to an

employee by accident or occupational disease, arising out of and in the course of employment, such employee shall receive compensation therefor from his or her employer *if the employee was not willfully negligent at the time of receiving such injury."* (Emphasis supplied.)

Neb. Rev. Stat. § 48-109 (Reissue 2004) provides:

> If both employer and employee become subject to the Nebraska Workers' Compensation Act, both shall be bound by the schedule of compensation provided in such act, which compensation shall be paid in every case of injury or death caused by accident or occupational disease arising out of and in the course of employment, *except accidents caused by or resulting in any degree from the employee's willful negligence as defined in section 48-151.*

(Emphasis supplied.)

Finally, Neb. Rev. Stat. § 48-127 (Reissue 2004) provides, "If the employee is injured *by reason of his or her intentional willful negligence,* or by reason of being in a state of intoxication, neither he or she nor his or her beneficiaries shall receive any compensation under the Nebraska Workers' Compensation Act." (Emphasis supplied.) Section 48-103 mentions none of these other sections. If the Legislature had intended § 48-103 to limit §§ 48-101, 48-109, and 48-127, it would have drafted § 48-103 so that it referred to these three sections in addition to § 48-102.

These two flaws lead us to reject the appellants' interpretation of § 48-103. We now turn to the question, What is the correct interpretation of § 48-103?

Generally, when an employee suffers an injury arising out of and in the course of employment, the Act provides the employee's exclusive remedy against the employer. *Skinner v. Ogallala Pub. Sch. Dist. No. 1,* 262 Neb. 387, 631 N.W.2d 510 (2001). This was part of the tradeoff between employers and employees that underlies the Act. Under the Act, injured employees can recover benefits even if the employers' negligence did not cause their injury. See §§ 48-101 and 48-109. See, also, *Ray v. School District of Lincoln,* 105 Neb. 456, 181 N.W. 140 (1920). In addition, employees can recover benefits, even if the common-law defenses of contributory negligence, the fellow-servant rule, or assumption of the risk would have prevented the employee from recovering

damages. § 48-102. See *Ray v. School District of Lincoln, supra.* In exchange, the compensation that the employee can recover is statutorily set. See § 48-109. This insulates the employer from large damage awards that the employee might have recovered in a common-law action.

But, if an employer subject to the Act fails to carry workers' compensation insurance or an acceptable alternative, then the Act is no longer the employee's exclusive remedy. Instead, the employee can elect to either proceed under the Act and recover the statutorily set benefits or seek to recover damages in a common-law action against the employer. See § 48-145(3). Cf. *Avre v. Sexton*, 110 Neb. 149, 193 N.W. 342 (1923).

Of course, if the employer could raise the common-law defenses of contributory negligence, the fellow-servant rule, or assumption of the risk, the employee's election would be of little value. Section 48-103 makes the employee's election meaningful by incorporating § 48-102 into the common-law action. In other words, § 48-103 prevents the employer from raising as defenses to the common-law action "the three defenses mentioned in § 48-102," i.e., contributory negligence (unless the employee was intoxicated or willfully negligent), the fellow-servant rule, and assumption of the risk.

Thus, § 48-103 provides a powerful incentive for an employer to carry either workers' compensation insurance or an acceptable alternative. If the employer does not, then the injured employee may elect to pursue either a common-law action or workers' compensation proceedings. If the employee chooses the common-law action, not only will the employer be subject to common-law damages, the employer's ability to raise the three common-law defenses most likely to defeat the employee's claim will be cut off.

## Was Coe Willfully Negligent?

Because we have decided that the appellees could raise the willful negligence defense, we now decide whether the compensation court erred in concluding that Coe committed willful negligence.

"Willful negligence consists of (a) a deliberate act, (b) such conduct as evidences reckless indifference to safety, or (c) intoxication

at the time of the injury, such intoxication being without the consent, knowledge, or acquiescence of the employer or the employer's agent." Neb. Rev. Stat. § 48-151(7) (Reissue 2004). The appellees do not contend that Coe deliberately injured himself or that he was intoxicated. The issue is whether his conduct rose to the level of "reckless indifference to safety."

Reckless indifference to safety means more than lack of ordinary care. It implies a rash and careless spirit, not necessarily amounting to wantonness, but approximating it in degree—a willingness to take a chance. An employee's conduct must manifest a reckless disregard for the consequences coupled with a consciousness that injury will naturally or probably result. *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000).

The employer bears the burden to prove the employee's willful negligence. Neb. Rev. Stat. § 48-107 (Reissue 2004). An appellate court, however, gives "considerable deference to a trial judge's determination of whether particular conduct amounted to willful negligence. If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court." *Guico v. Excel Corp.*, 260 Neb. at 721, 619 N.W.2d at 478.

Here, we are concerned with an alleged violation of a federal regulation meant to prevent accidents caused by driver fatigue. The violation of a statute or regulation is evidence of willful negligence, but does not automatically equate to willful negligence. See 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 37.03 (2004). For example, driving 5 miles over the speed limit is not conduct that will "naturally or probably result" in injury. Likewise, even if the employee's conduct would naturally or probably result in injury, the evidence would still need to show that the employee understood the danger, but proceeded regardless. Thus, a daydreaming driver who failed to stop at a stop sign before entering a busy intersection would not be willfully negligent.

This case, however, is not one where the employee did not know of the regulation. Ronald Willmes testified that he had discussed the federal regulation with Coe. Nor is this a case where the violation resulted from a momentary lapse of judgment. Under the

federal regulation, a driver is required to rest for 8 hours after 10 hours of driving. When the accident occurred, Coe had been driving for 17 hours with only brief stops to pick up his load and for gas and restroom breaks. That Coe had exceeded the federal regulation by approximately 7 hours shows that he deliberately decided to violate the regulation.

Moreover, Coe violated the regulation knowing that he was at a high risk for the very thing that the regulation was meant to prevent—falling asleep while driving. His mother and his brother had recently warned him about pushing himself too hard. In addition, his mother stated that he had an unusual propensity for falling asleep quickly and that he had a history of falling asleep while driving. In fact, he had had one previous accident that occurred when he fell asleep at the wheel. Thus, the record supports the compensation court's conclusion that Coe knew of and appreciated the substantial risk presented by driving for as long as he did without resting, but decided to undertake that risk anyway.

The appellants argue that despite Coe's violation of the federal regulation, they can recover benefits because the appellees had acquiesced in Coe's past violation of the regulation. We agree that an employer's knowledge of and acquiescence in an employee's violation of a government safety regulation is a factor that a court should consider in deciding whether the employee was willfully negligent. See 2 Larson & Larson, *supra*, § 35.04. See, also, *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000) (holding that employer's failure to enforce its own safety rule is factor to be considered in whether employee's violation of safety rule is willful negligence). But we disagree that the appellees acquiesced in Coe's violation of the federal regulation.

Generally, Ronald Willmes, who, unlike Sharon Willmes, was actively involved in running the Company, did not track Coe's progress when Coe was on a trip. Coe sent his logbooks to Freedom, and Ronald Willmes usually did not see them. The Company, however, was paid by the number of bushels that Coe hauled, and thus Ronald Willmes would have had at least a general idea of the hours Coe was driving. Further, Ronald Willmes testified that he had some concern with the amount of hours Coe

would drive in a day. But the record does not suggest that Ronald Willmes, upon learning that Coe had probably exceeded the federal regulation on a few occasions, acquiesced in the violations. Rather, Ronald Willmes testified that once or twice, he told Coe to "slow her down." While this is not overwhelming evidence of Ronald Willmes' enforcing the government safety regulation, it is enough to support the compensation court's decision under our deferential standard of review.

### CONCLUSION

The appellees' failure to carry workers' compensation insurance did not preclude them from raising the willful negligence defense, and the compensation court did not err in concluding that Coe had been willfully negligent. As a result, it is unnecessary for us to consider the appellants' final assignment of error.

AFFIRMED.

WRIGHT, J., not participating.