NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2059-18

IN RE N.J.A.C. 17:2-6.5.

_____

APPROVED FOR PUBLICATION
June 21, 2021
APPELLATE DIVISION

Argued April 21, 2021 – Decided June 21, 2021

Before Judges Ostrer, Accurso and Vernoia.

On appeal from the adoption of amendments to
N.J.A.C. 17:2-6.5 by the Board of Trustees, Public
Employees' Retirement System.

Jason E. Sokolowski argued the cause for appellant
New Jersey Education Association (Zazzali, Fagella,
Nowak, Kleinbaum & Friedman, attorneys; Richard A.
Friedman, of counsel and on the briefs).

Robert E. Kelly, Deputy Attorney General, argued the
cause for respondent Board of Trustees, Public
Employees' Retirement System (Gurbir S. Grewal,
Attorney General, attorney; Sookie Bae, Assistant
Attorney General, of counsel; Robert E. Kelly, on the
brief).

The opinion of the court was delivered by

OSTRER, P.J.A.D.

To receive an accidental disability pension, a public employee must

prove that his or her "disability was not the result of his [or her]

willful negligence."  N.J.S.A. 43:15A-43(a).  For over fifty years, the Public

Employees' Retirement System (PERS) Board defined "[w]illful negligence" as "1. [a] [d]eliberate act or deliberate failure to act; or 2. [s]uch conduct as evidences reckless indifference to safety; or 3. [i]ntoxication, operating as the proximate cause of injury." N.J.A.C. 17:2-6.5(a) (2017); see N.J.A.C. 17:2 hist. n. (stating that these rules were adopted before September 1, 1969). In 2017, the Board amended the first alternative to read: "Deliberate act or deliberate failure to act that reflects an intentional or purposeful . . . deviation from the standard of care exercised by a reasonable person in similar circumstances." 50 N.J.R. 646(a) (Dec. 13, 2017) (adoption); see also 49 N.J.R. 2189(a) (July 17, 2017) (proposal).[1] On appeal, the New Jersey Education Association asks us to invalidate the amendment, arguing that the change extends the statute beyond its intended meaning, and thereby

---

[1] The adopted rule mistakenly includes an extra "or" — that is, it defines "[w]illful negligence" as a "[d]eliberate act or deliberate failure to act that reflects an intentional or purposeful or deviation from the standard of care exercised by a reasonable person in similar circumstances." N.J.A.C. 17:2-6.5(a)(1) (emphasis added). The words "intentional or purposeful" make sense only when they directly modify "deviation." Although the Board agreed on appeal that it inserted the second "or" by mistake, it has decided to await resolution of this case to correct the error (which it could do by formal amendment or by seeking technical correction through the Office of Administrative Law. See N.J.A.C. 1:30-2.7 (stating procedure for administrative correction of "obvious, easily recognizable, or apparent" error)). We interpret the regulation without reference to the extra "or."

A-2059-18

disqualifies public employees from receiving accidental disability benefits who are properly qualified for such benefits under the statute.

We agree and invalidate the Board's 2018 amended "willful negligence" definition because it strays from the Legislature's intent, and because the Board's own reasoning supporting its rule is arbitrary and self-contradictory.

I.

We presume a regulation is valid, N.J. State League of Muns v. Dep't of Cmty. Affs, 158 N.J. 211, 222 (1999), and review it narrowly and deferentially, In re N.J.A.C. 12:17-2.1, 450 N.J. Super. 152, 166 (App. Div. 2017). We defer to an agency's rule-making because we recognize that "certain subjects are within the [agency's] peculiar competence." In re Amend. of N.J.A.C. 8:31B-3.31 & N.J.A.C. 8:31B-3.51, 119 N.J. 531, 543 (1990). When a statute is "silent or ambiguous" about an issue, we may not replace an agency's "permissible" interpretation of that statute with our own view. Kasper v. Bd. of Trs. of the Tchrs.' Pension & Annuity Fund, 164 N.J. 564, 581 (2000) (quoting 2 Am. Jur. 2d Administrative Law § 525 (1994)).

But our deference has limits. We accord "less deference" to a newly minted agency interpretation, "which has not previously been subjected to judicial scrutiny or time-tested agency interpretation." See id. at 580 (quoting 2 Am. Jur. 2d Administrative Law § 524 (1994)). That is especially so when

the new interpretation departs from a prior, long-standing interpretation. See Safeway Trails, Inc. v. Furman, 41 N.J. 467, 484 (1964). In Safeway Trails, the Court reviewed an Attorney General's opinion that reversed a prior opinion. The Court stated that if an agency's statutory "construction is not uniform and consistent, it will be taken into account only to the extent that it is supported by valid reasons." Ibid. (quoting Burnet v. Chi. Portrait Co., 285 U.S. 1, 16 (1932)). Furthermore, we owe no deference at all to an agency's interpretation of judicial precedent. Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 171 (App. Div. 2018).

At bottom, an agency's rulemaking "must be reasonable and not arbitrary" and must further the Legislature's goals. Pascucci v. Vagott, 71 N.J. 40, 50 (1976). We shall set aside a regulation that is "unreasonable or irrational," Bergen Pines Cnty. Hosp. v. N.J. Dep't of Hum. Servs., 96 N.J. 456, 477 (1984), or that "violate[s] the enabling act's express or implied legislative policies," Williams v. N.J Dep't of Hum. Servs., 116 N.J. 102, 108 (1989); see also In re N.J. Individual Health Coverage Program's Readoption of N.J.A.C. 11:20-1, 179 N.J. 570, 579 (2004) (stating that "[a]dministrative regulations 'cannot alter the terms of a statute or frustrate the legislative policy'" (quoting Med. Soc'y of N.J. v. N.J. Dep't of L. & Pub. Safety, 120 N.J. 18, 25 (1990))); In re Amend. of N.J.A.C. 8:31B-3.31, 119 N.J. at 543-44

(stating that appellate courts determine whether a rule "is arbitrary, capricious, unreasonable, or beyond the agency's delegated power").  Ultimately, "we are 'in no way bound by an agency's interpretation of a statute or its determination of a strictly legal issue.'"  Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting Mayflower Sec. Co. v. Bureau of Sec., 65 N.J. 85, 93 (1973)).

## II.

To determine if the Board's amendment conforms to the Legislature's express or implied policy, we turn first to the statute.  The PERS statute withholds accidental-disability pensions from employees whose disability results from their "willful negligence," N.J.S.A. 43:15A–43(a) — but the statute does not define "willful negligence," let alone a "deliberate act or deliberate failure to act."  Neither do the statutes for the Police and Firemen's Retirement System (PFRS), the Teachers' Pension & Annuity Fund (TPAF), and the State Police Retirement System (SPRS), which likewise deny accidental-disability pensions because of willful negligence.  See N.J.S.A. 18A:66-39(c) (TPAF); N.J.S.A. 43:16A-7(a)(1) (PFRS); N.J.S.A. 53:5A-10(a) (SPRS).[2]  Because the PERS statute's plain meaning is unclear, we turn to

---

[2]  The "willful negligence" disqualifier has a long history.  For example, we find it in the 1921 statute of the old State Employees' Retirement System.  L.

other sources, including related provisions of law, for interpretative help.  See In re H.D., 241 N.J. 412, 418 (2020).

The Legislature did define "willful negligence" in a related provision of law:  the Workers' Compensation Act.  As adopted in 1911, the act provided: "For the purposes of this act, willful negligence shall consist of (1) deliberate act or deliberate failure to act, or (2) such conduct as evidences reckless indifference to safety, or (3) intoxication, operating as the proximate cause of injury."  L. 1911, c. 95, § 3, ¶ 23.[3]  The PERS regulation that stood for over fifty years tracked the Workers' Compensation Act's original language.  So did regulations dealing with the three other major public pension systems, see N.J.A.C. 17:3-6.5(a) (TPAF); N.J.A.C. 17:4-6.5(a) (PFRS); N.J.A.C. 17:5-5.4 (2018) (SPRS), until, in 2019, SPRS adopted the same amendment PERS did, see 51 N.J.R. 349(a) (Mar. 4, 2019) (proposal); 51 N.J.R. 1059(a) (June 17,

---

1921, c. 109, § 11 (codified at N.J.S.A. 43:14-31, then repealed by L. 1954, c. 84, § 4).

[3]  The Legislature amended the Workers' Compensation Act in 1979 to add a fourth category, "(4) unlawful use of a controlled dangerous substance as defined in the 'New Jersey Controlled Dangerous Substances Act,' P. L. 1970, c. 226 (C.24:21-1 et seq.)."  L. 1979, c. 283, § 12.  That change did not find its way into the pension regulations.

2019) (adoption).[4]  Notably, when PFRS readopted its regulations in 2019, it did not adopt the PERS amendment.  See 51 N.J.R. 270(a) (Feb. 19, 2019).

The PERS Board's initial decision to import the Workers' Compensation Act's definition conformed with judicial interpretation of the Workers' Compensation and pension laws.  The Workers' Compensation Act's and the accidental-disability pension law's shared goal to assist disabled workers led our Court to consistently interpret common concepts in the two laws.  See Gerba v. Bd. of Trs. of the Pub. Emps.' Ret. Sys., 83 N.J. 174, 181-82 (1980) (discussing earlier applications of Workers' Compensation Act's concept of causation to PERS statute); Roth v. Bd. of Trustees, Pub. Emps,' Ret. Sys., 49 N.J. Super. 309, 319-20 (App. Div. 1958) (applying Workers' Compensation Act's concept of causation to PERS statute).

Even if these laws are not strictly in pari materia, both secure benefits to workers disabled on the job.  And both erect an impediment to workers who are willfully negligent.  This justifies interpreting "willful negligence" consistently.  See Shambie Singer & Norman J. Singer, Sutherland Statutory Construction, § 51:3 (7th ed. 2020) (stating that how one views a statute's "object or purpose" is more important than its "subject matter" in deciding if

---

[4]  The SPRS regulation does not include the extra "or" found in the PERS regulation.  See supra note 1.

A-2059-18

"different statutes are closely enough related to justify interpreting one in light of the other"); see also Brewer v. Porch, 53 N.J. 167, 174 (1969) (stating that "[a]cts in pari materia as well as related acts not strictly in pari materia, should be examined" to ascertain a statute's meaning); Bank of Montclair v. McCutcheon, 107 N.J. Eq. 564, 567 (Prerog. Ct. 1930) (stating that "statutes relating to the same or similar subject-matter are to be construed together").

We recognize that over the years, the Legislature has stepped in to decouple the two laws in some respects. See Gerba, 83 N.J. at 182. But not as the laws relate to willful negligence. The Legislature's inaction on this point suggests its approval of uniform treatment of the "willful negligence" provisions; "an agency's construction of a statute over a period of years without legislative interference will under appropriate circumstances be granted great weight as evidence of its conformity with the legislative intent." Malone v. Fender, 80 N.J. 129, 137 (1979). Thus, we conclude that the Legislature intended the Workers' Compensation Act's definition of "willful negligence" to apply to the PERS statute.

That leads us to ask what the Legislature meant when it defined "willful negligence" in the Workers' Compensation Act as a "deliberate act or deliberate failure to act" (the first of three alternative definitions in the Workers' Compensation Act's definition and the prior PERS regulation).

8 <span>A-2059-18</span>

In passing the 1911 statute, the Legislature largely followed a study commission's recommendations. See Comm'n on Employers' Liab., <u>Message of the Governor of New Jersey Transmitting to the Legislature the Report of the Commission on Employers' Liability</u> (1911).

The 1911 Act created a two-tiered system. One of those tiers established a new system of elective compensation for injuries or death in the course of employment "in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury." <u>L.</u> 1911, <u>c.</u> 95, § 2, ¶ 7.

For those workers left outside the elective compensation system, the new law made it easier to sue negligent employers for damages. At the time, workers suing their employers faced defenses based on contributory negligence, assumption of risk, and fellow-employees' negligence. <u>See</u> Comm'n on Employers' Liab. at 9-11. As the Commission recommended, the 1911 law abolished the last two defenses, and weakened the first by limiting it to cases where the employee is "willfully negligent." <u>L.</u> 1911, <u>c.</u> 95, § 1, ¶ 1-2.[5]

---

[5] <u>See</u> <u>Taylor v. Seabrook</u>, 87 N.J.L. 407, 408 (Sup. Ct. 1915) (noting that "willful negligence" is only a defense to a claim under section 1 of the 1911 law).

The Commission explained that it was not prepared to jettison contributory negligence entirely. Comm'n on Employers' Liab. at 9. Rather, it stated: "In order . . . to prevent the nonsuiting of the injured employe [sic] on a mere technicality, i.[e.], where his negligence is relatively trivial, we recommend the modification of the present law as stated in our proposed bill requiring the proof of 'willful negligence.'" Id. at 10. The Commission appeared to adopt the common-law meaning of the term, stating, "While, technically, these words are a contradiction of terms, we are advised that they have a well-established meaning in judicial procedure." Ibid.

In light of the Commission's expression of intent, we must try to harmonize the statutory definition, including its reference to deliberate acts and deliberate failures to act, with the "well-established" judicial interpretation of "willful negligence." According to case law and authoritative references, that judicial interpretation evidently defined "willful negligence" to include an element of recklessness.

The Black's Law Dictionary at the time defined "[w]illful negligence" by placing it in the hierarchy of fault above "gross negligence," stating, "Though rejected by some courts and writers as involving a contradiction of terms, this phrase is occasionally used to describe a higher or more aggravated form of negligence than 'gross.'" Black's Law Dictionary 811 (2d ed. 1910). "Gross

10

negligence," as it related to personal-injury claims, meant negligence that "evidence[d] a reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or that entire want of care which would raise the presumption of a conscious indifference to the rights of others which is equivalent to an intentional violation of them."[6] Ibid. By contrast, the term "[w]illful negligence" — when applied to "a higher or more aggravated form of negligence" — "mean[t] a willful determination not to perform a known duty, or a reckless disregard of the safety or the rights of others, as manifested by the conscious and intentional omission of the care proper under the circumstances." Ibid.

The old Black's Law definition of "[w]illful negligence" did not mention "deliberate act or deliberate failure to act." Ibid. But it defined "deliberate," as used "in describing a crime," to include actions that involve a "weighing of

---

[6] We recognize that "rigid classifications of the 'degrees of negligence have been abandoned' in our case law," In re N.J.A.C. 12:17-2.1, 450 N.J. Super. at 169 (quoting Stelluti v. Casapenn Enters., LLC, 408 N.J. Super. 435, 457 n.6 (App. Div. 2009), aff'd, 203 N.J. 286 (2010)). Nonetheless, "gross negligence" is still characterized as occupying "the upper reaches of negligent conduct." Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 364 (2016) (quoting Parks v. Pep Boys, 282 N.J. Super. 1, 17 n.6 (App. Div. 1995)). "[G]ross negligence is an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission." Id. at 364-65. "[N]egligence, gross negligence, recklessness, and willful conduct fall on a spectrum"; and "reckless and willful conduct are degrees of civil culpability greater than gross negligence." Id. at 365-66.

motives and consequences." Id. at 348. The adjective "conveyed" the idea "that the perpetrator weighs the motives for the act and its consequences, the nature of the crime, or other things connected with his intentions, with a view to a decision thereon; that he carefully considers all these; and that the act is not suddenly committed." Ibid. A "deliberate" act, then, was more akin to an act of "[w]illful negligence" than to one of "[g]ross negligence."

And the Restatement of Torts noted that "[c]onduct which is in reckless disregard of a legally protected interest of others is thus constantly spoken of as a form of negligence, the phrases used being 'reckless,' 'wanton' and 'wilful negligence,' as distinguished from 'negligence' or 'mere negligence.'" Restatement of the Law, Torts § 282 cmt. d, special note (Am. Law. Inst. 1939) (emphasis added).[7]

Case law also treated "willful negligence" as involving an element of recklessness. In Tarasewicz v. Bowker, 5 N.J. Super. 399, 401-02 (App. Div. 1949), we addressed the meaning of "willful negligence" in reviewing the common-law rule that made a private automobile-operator liable to a licensee only for acts of willful or wanton negligence or intentional harm. Ibid. We

_____

[7] While acknowledging the common usage, the Restatement advocated drawing a line between negligence and reckless conduct, because the law treats reckless conduct differently from negligence in various respects. Ibid.

held that the defendant was not willfully negligent when the plaintiffs fell or jumped from the running boards of the defendant's vehicle. We noted that the former Supreme Court, in Rose v. Squires, 101 N.J.L. 438, 440-41 (Sup. Ct. 1925), aff'd, 102 N.J.L. 449 (E. & A. 1926), "treated 'willfully negligent' as the equivalent of 'taking a chance.'" Tarasewicz, 5 N.J. Super. at 402. But simply taking a chance was not enough, as we explained: "[S]ome chances are better than others. In order to hold [a] defendant liable in the absence of intentional injury, his conduct must have a reckless quality and the probability of serious consequences must be apparent." Ibid.

We have found no New Jersey reported opinion, and the parties point to none, directly interpreting the "[d]eliberate act" prong in any case involving either the Workers' Compensation Act or the pension laws. But the Court has indicated generally that recklessness is an essential element of the willful-negligence definition. In Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007), the Court cited PFRS's "willful negligence" definition, which as noted matched the pre-2018 PERS definition, to support its statement that "the disability cannot be the result of the member's 'willful

negligence.' That is, the member cannot, by action or inaction, have brought about his disability through his reckless indifference to safety."[8]

Furthermore, Nebraska's courts, interpreting a "[w]illful negligence" definition (from its workers' compensation statute) that closely mirrors ours, have interpreted a "deliberate act" much more narrowly than has the Board in the challenged regulation. Much like our Workers' Compensation Act, the Nebraska statute defines "[w]illful negligence" to mean "(a) a deliberate act, (b) such conduct as evidences reckless indifference to safety, or (c) intoxication at the time of the injury, such intoxication being without the consent, knowledge, or acquiescence of the employer or the employer's agent." Neb. Rev. Stat. § 48-151(7). In Spaulding v. Alliant Foodservice, Inc., 689 N.W.2d 593, 603 (Neb. Ct. App. 2004), the court concluded that "'a deliberate act' . . . refers to an employee's deliberate injury of himself or herself."

In reaching this conclusion, the Spaulding court relied on Guico v. Excel Corp., 619 N.W.2d 470 (Neb. 2000), in which the Nebraska Supreme Court discussed "willful negligence." Ibid. In Guico, a worker dispensed with

---

[8] In Brooks v. Bd. of Trs., Pub. Emps.' Ret. Sys., 425 N.J. Super. 277, 284 n.2 (App. Div. 2012), we determined that the actions of a custodian who injured his back carrying a three-hundred-pound weight-training bench "did not rise to the level of 'willful negligence'" under the old definition, even if they amounted to ordinary negligence. However, we did not explore the elements of "willful negligence" in detail.

14

wearing safety gloves that he knew were required. Ibid. Guico, the worker, said that he switched from a task that did not require the gloves to one that did; he was rushed; and he "'never imagined' that he would be injured." Guico, 619 N.W.2d at 473-74. The Nebraska Supreme Court held that Guico "acted negligently and carelessly," but that "mere negligence is not the equivalent of 'willful negligence' . . . , which consists of conduct which manifests a reckless disregard for the consequences coupled with a consciousness that injury will naturally or probably result." Id. at 478. Furthermore, the court noted that although Guico knowingly disregarded the safety rule, "there is no contention that [he] injured himself deliberately or as a consequence of intoxication." Id. at 476. The Spaulding court interpreted this statement to imply that a "deliberate act" refers to deliberate self-injury. Spaulding, 689 N.W.2d at 603. See also Guico, 619 N.W.2d at 480 (Stephan, J., dissenting) (stating that worker's testimony that he never "imagined" he would be injured "would lead to a reasonable inference that Guico did not commit 'a deliberate act' constituting willful negligence").

Moreover, Nebraska courts hold — as we hold in this case — that not every intentional violation of a regulation or standard of care suffices to establish willful negligence. In Estate of Coe v. Willmes Trucking, L.L.C., 689 N.W.2d 318, 326 (Neb. 2004), a trucker, aware of a federal regulation that

15

required him to rest eight hours after driving ten, drove seventeen consecutive hours (with brief stops) before he crashed.  The court affirmed a finding of willful negligence.  Id. at 327.  But the court also distinguished less egregious, though no less intentional, violations of standards of care — such as "driving 5 miles over the speed limit" or violating a regulation because of "a momentary lapse of judgment" — that did not constitute willful negligence.  Id. at 326-27.

We are convinced the Board's amendment enables it to disqualify accidental-disability applicants more easily than the Legislature intended.  The regulation omits the recklessness element evident in the case law and other sources.  It also omits the fact that a deliberate actor considers the consequences that likely will follow.  Under the amended definition, no matter how minor the standard of care or how trivial the deviation, the Board could deem employees "willfully negligent" and disqualify them from accidental disability pensions if they "intentional[ly] or purposeful[ly] . . . deviate[] from the standard of care exercised by a reasonable person in similar circumstances."  Such a formulation violates the Legislature's explicit goal of creating a standard that excluded "relatively trivial" acts of negligence.  It would disqualify workers for acts of negligence more benign than gross negligence, even though the 1910 Black's Law Dictionary definition defined "[w]illful negligence" as something worse than "[g]ross negligence," which

16

itself includes recklessness or conscious indifference to others.[9]  Even assuming for argument's sake that "[d]eliberate act" does not require an intent to harm oneself, it means more than just any intentional violation of a standard of care.

The Board also undercut its rulemaking when it addressed the NJEA's objection to the Board's proposal.  The NJEA asserted "that the proposed section 'attempts to change the definition of willful negligence, which has been defined as the equivalent of recklessness, into simple negligence.'"  50 N.J.R. 646(a) cmt. 9 (Jan. 16, 2018).  In response, the Board insisted that its "willful negligence" definition made reckless disregard of others' safety an essential element.  The Board stated that a "reckless" deviation of a standard of care is included in the "deliberate act" amendment:

> The current language of N.J.A.C. 17:2-6.5(a)[(1)] defines willful negligence as a deliberate act or

---

[9] We acknowledge that the old "[w]illful negligence" definition also referred to "the conscious and intentional omission of the care proper under the circumstances," which seems similar to the Board's formulation, "an intentional or purposeful . . . deviation from the standard of care exercised by a reasonable person in similar circumstances."  But the dictionary definition preceded its clause with "a willful determination not to perform a known duty, or a reckless disregard of the safety or the rights of others."  A "willful determination" is evidently more than an intentional or purposeful action.  "Determination" suggests a knowing and purposeful action.  "Willful" adds "[p]roceeding from a conscious motion of the will; intending the result which actually comes to pass; designed; intentional; malicious."  Black's Law Dictionary 1228 (2d ed. 1910).

A-2059-18

> deliberate failure to act. The additional language simply expounds upon paragraph (a)[(1)] by stating that such acts or failures to act are deliberate because they reflect a <u>reckless</u> <u>deviation</u> from the standard of care exercised by a reasonable person in similar circumstances.
>
> [<u>Ibid.</u> (emphasis added).]

However, the adopted regulation does not include the "reckless" modifier when describing deviations from the standard of care. The disconnect between the agency's rule and its explanation further convinces us that the Board's rule-making is arbitrary and irrational.

Furthermore, the agency's answer included a dictionary definition that referenced recklessness, again disclosing an intention to encompass only those intentional deviations that recklessly disregard others' safety. The agency stated: "This added language reflects standard legal definitions of willful negligence. For example, <u>Black's Law Dictionary</u>, 10th Ed., defines willful negligence as 'A conscious, voluntary act or omission in <u>reckless disregard of a legal duty and of the consequences to another party</u>, who may typically recover exemplary damages.'"[10] <u>Ibid.</u> (emphasis added).

---

[10] We note that the Black's Law Dictionary edition quoted defines "willful negligence" as both "<u>advertent negligence</u>" and "<u>gross negligence</u>"; the language the Board quoted is the second alternative definition of "gross negligence." <u>Black's Law Dictionary</u> 1197-98 (10th ed. 2014). "[A]dvertent

Yet, as we have discussed, the agency's current rule fails to convey this intent. The rule does not require proof of a reckless disregard of others' safety; simply put, any intentional or purposeful deviation from a standard of care will suffice to disqualify a pension applicant.

Finally, nothing suggests that the Legislature intended "[w]illful negligence" to mean one thing under PERS and SPRS, and another thing under PFRS and TPAF, given the similarity of the pension laws and their common goals. See Bank of Montclair, 107 N.J. Eq. at 567 (stating that, barring a contrary indicated intent, "it must be presumed" that when the Legislature used the same word in multiple statutes forming a unified system, "the Legislature used the word in the later statute in the same sense as in the other earlier statutes"). The major pension systems' inconsistent definitions highlight the arbitrariness of the PERS Board's action.

In sum, the agency's rule disqualifies workers for conduct more trivial than what the Legislature contemplated in the Workers' Compensation Act and the pension laws. Also, the Board's stated reasoning does not support its chosen formulation. For these reasons, the agency's amendment to N.J.A.C. 17:2-6.5(a)(1) is arbitrary, capricious and unreasonable.

---

negligence" is defined as "[n]egligence in which the actor is aware of the unreasonable risk that he or she is creating." Id. at 1196.

Therefore, the agency's amended rule is invalid. The prior rule is reinstated. Our decision does not prevent the Board from adopting a clarifying amendment to the rule consistent with the Legislature's intent.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION