Patricia Hadfield, appellant, v. Nebraska
Medical Center and Safety National
Casualty Corporation, appellees.

___ N.W.2d ___

Filed July 9, 2013.    No. A-12-556.

1.  **Workers' Compensation: Appeal and Error.** An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2.  ____: ____. On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.

3.  ____: ____. With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination.

4.  **Workers' Compensation.** A worker may recover under Nebraska's workers' compensation laws only for injuries caused by an accident or occupational disease.

5.  **Workers' Compensation: Words and Phrases.** The definition of "accident," as used in Neb. Rev. Stat. § 48-101 (Reissue 2010), includes injuries resulting from activities which create a series of repeated traumas ultimately producing disability.

6.  **Workers' Compensation.** A workers' compensation claimant does not have to make specific election between cumulative trauma and specific injury.

7.  **Final Orders.** Silence in an order on a request for relief not spoken to must be construed as a denial of such request.

8.  **Workers' Compensation: Appeal and Error.** A trial judge's failure to discuss a specific request for relief may nonetheless constitute error requiring reversal or remand of the cause when the order does not comply with Workers' Comp. Ct. R. of Proc. 11 (2011) by providing a basis for a meaningful appellate review.

9.  ____: ____. Workers' Comp. Ct. R. of Proc. 11 (2011) is designed to ensure that compensation court orders are sufficiently clear in addressing requests for relief in order that an appellate court can review the evidence relied upon by the trial judge in support of his or her findings.

10.  **Workers' Compensation.** When a workers' compensation claimant pleads both specific injury and cumulative trauma as theories of recovery, the compensation court's order must address both theories in order to comply with Workers' Comp. Ct. R. of Proc. 11 (2011).

11.  **Appeal and Error.** Errors argued but not assigned will not be considered on appeal.

Appeal from the Workers' Compensation Court: James R. Coe, Judge. Reversed and remanded with directions.

Laura L. Pattermann and Sheldon M. Gallner, of Gallner & Pattermann, P.C., for appellant.

William J. Birkel and Noah M. Priluck, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellees.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

Patricia Hadfield appeals from the Workers' Compensation Court's order of dismissal, contending that the order of dismissal did not appropriately address her injuries as arising from cumulative, repetitive trauma. Because we find that the compensation court's order did not provide a meaningful basis for review of Hadfield's claim of cumulative, repetitive trauma, we reverse, and remand with directions.

## FACTUAL BACKGROUND

Hadfield was employed at the University of Nebraska Medical Center (UNMC) as a sonographer from March 6, 2000, until her termination of employment on June 2, 2011. UNMC terminated Hadfield from her position when it could no longer accommodate her work restrictions that resulted from a left elbow injury. When UNMC disputed this injury resulted from her work as a sonographer, Hadfield filed a claim in the Nebraska Workers' Compensation Court.

Hadfield asserted her elbow injury occurred during the course of her employment as a sonographer at UNMC. In this role, Hadfield's general responsibility was to scan patients in order to provide images for a radiologist to interpret. In order to scan patients, Hadfield would often have to push the ultrasound machine cart to various locations in the hospital, including the intensive care units and the emergency room. Hadfield testified that these ultrasound machines weighed approximately 500 pounds. In addition to pushing the ultrasound cart throughout the hospital, Hadfield was also required to transport and position patients for scans, apply gel to patients, and run a computer.

Hadfield testified that on January 6, 2011, she experienced a sharp pain in her left elbow when she squeezed a

gel bottle while preparing to scan a patient. When the pain did not subside within a few days, Hadfield reported this injury to her family physician, Dr. Douglas Wheatley, on January 10. Wheatley diagnosed this injury as left lateral epicondylitis and placed Hadfield on a 10-pound pushing, grasping, and squeezing restriction. In addition to seeing Wheatley, Hadfield also notified her lead ultrasound technician that she had suffered this injury and had to follow the work restrictions.

After seeing Wheatley, Hadfield visited the UNMC employee health clinic on January 18, 2011. According to the clinic's records, Hadfield reported that "she simply went to bed one night entirely pain free and woke up with an achy, sore left elbow and every day has gotten worse." The clinic completed its own examination of Hadfield and concurred with Wheatley's initial diagnosis. However, the clinic determined Hadfield's pushing, grasping, and pulling restriction should be increased to 125 pounds. Hadfield testified she was able to complete her job duties with the 125-pound restriction as long as she received help transporting and positioning patients. Between January 10 and her termination on June 2, Hadfield was able to complete her job duties with the necessary accommodations. UNMC terminated Hadfield's employment when it was no longer able to accommodate her work restrictions.

Hadfield received a variety of medical treatments to care for her condition. This care included occupational and physical therapy, pain management, and two injections into her left elbow in attempts to alleviate the pain. None of these treatments was effective. Therefore, on September 7, 2011, Hadfield underwent a "lateral epicondyle release" performed by Dr. Edward Fehringer. This procedure was ultimately ineffective, because Hadfield continued to experience persistent pain.

As a result of continued pain and unemployment, Hadfield also began to suffer from depression. For treatment of her depression, she sought the services of both a psychologist and a psychiatrist. Eventually, Hadfield was prescribed antidepressants.

After UNMC and its workers' compensation insurance carrier, Safety National Casualty Corporation (SNCC), refused to pay continuous benefits for medical treatment or disability, Hadfield filed a petition in the Workers' Compensation Court on September 14, 2011. Hadfield alleged that she sustained personal injuries "on or about January 16 [sic], 2011," in an accident arising out of and in the course of her employment with UNMC. We note that although Hadfield's complaint stated that she suffered personal injuries on January 16, all other evidence clearly shows the alleged date of injury to have been January 6. Therefore, for purposes of this appeal, we will show the alleged date of injury to have been January 6. Paragraph 4 of her petition stated, "[T]he accident and resulting personal injuries occurred in the following manner: [Hadfield] repetitively performs approximately seven to eight sonograms per day causing injury to her left arm." UNMC and SNCC's answer to this complaint admitted Hadfield was employed by UNMC in January 2011, but denied each and every other allegation. UNMC and SNCC also affirmatively alleged that the injuries in Hadfield's petition were not causally connected to an accident within the course and scope of her employment with UNMC, but were the result of "an independent, intervening, non-compensable cause."

The Workers' Compensation Court held a hearing on April 24, 2012. At this hearing, Hadfield testified regarding her injuries and submitted medical evidence. Hadfield testified that she performed seven to eight sonograms per day, which involved having to constantly apply gel to patients, which in turn required squeezing the gel bottle. She also testified about her daily job duties of pushing patients on carts and in wheelchairs, pushing the sonogram machine to different areas, and operating the computer. Among her medical evidence, Hadfield submitted reports from both Wheatley and Fehringer, which reports concluded that her injury was secondary to her work as a sonographer. Specifically, Wheatley's January 10, 2011, notes regarding his visit with Hadfield state that she "complain[ed] of left elbow pain since January 1, 2011. This affects the lateral aspect of her elbow. This problem developed secondary to [her] repetitive use while working." Fehringer's

reports stated that Hadfield "has had problems with her left elbow related to repetitive utilization of her left upper extremity as part of her occupation." Fehringer's February 3, 2012, report concluded that Hadfield's injury caused a 7-percent permanent impairment.

Among its evidence, UNMC submitted two independent reports conducted by Dr. Dean Wampler. These reports concluded Hadfield's injury could not have been caused by her work as a sonographer at UNMC. In addition to Wampler's reports, UNMC also submitted the medical records from Hadfield's visit to the employee health clinic on January 18, 2011. Like Wampler's reports, these records also concluded Hadfield's injury was likely not work related.

On June 6, 2012, the Workers' Compensation Court issued an order of dismissal. In this order, the court admitted this case presented a close question, but placed more weight on Wampler's report and the medical records from the employee health clinic. The court concluded, "[Hadfield] has failed to prove by a preponderance of the evidence that on January 6, 2011, [she] sustained an injury that occurred in the course and scope of her employment and for this reason [her] petition should be dismissed."

Hadfield appeals from this order of dismissal.

## ASSIGNMENT OF ERROR

Hadfield's sole assignment of error is that the Workers' Compensation Court erred when it failed to address the issue of cumulative, repetitive trauma as pled in her petition.

## STANDARD OF REVIEW

[1,2] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2012), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Manchester v. Drivers Mgmt.*, 278 Neb. 776,

775 N.W.2d 179 (2009); *Wissing v. Walgreen Company*, 20 Neb. App. 332, 823 N.W.2d 710 (2012). On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013).

[3] With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Lovelace v. City of Lincoln*, 283 Neb. 12, 809 N.W.2d 505 (2012).

## ANALYSIS

*Did Order of Dismissal Address*
*Cumulative, Repetitive Trauma?*

Hadfield claims that the compensation court failed to consider whether her injuries were the result of cumulative, repetitive trauma. Therefore, she claims the order of dismissal does not comport with Workers' Comp. Ct. R. of Proc. 11(A) (2011). At the time of this case, rule 11(A) provided that "[d]ecisions of the court shall provide the basis for a meaningful appellate review. The judge shall specify the evidence upon which the judge relies."

[4-6] A worker may recover under Nebraska's workers' compensation laws only for injuries caused by an accident or occupational disease. See Neb. Rev. Stat. § 48-101 (Reissue 2010). Nebraska courts have made it clear that the definition of "accident," as used in § 48-101, includes injuries resulting from activities which create a series of repeated traumas ultimately producing disability. See, *Risor v. Nebraska Boiler*, 277 Neb. 679, 765 N.W.2d 170 (2009); *Veatch v. American Tool*, 267 Neb. 711, 676 N.W.2d 730 (2004); *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982). Additionally, this court has found that a claimant does not have to make specific election between cumulative trauma and specific injury. *Armstrong v. Watkins Concrete Block*, 12 Neb. App. 729, 685 N.W.2d 495 (2004). Therefore, under Nebraska law, Hadfield is permitted to allege injuries and to attempt to recover for injuries under a cumulative, repetitive trauma theory in addition to the specific injury theory.

As explained in the factual background section above, Hadfield asserted that she suffered a work-related injury on January 6, 2011, and she also alleged in her petition that she suffered her injury after repetitively performing seven to eight sonograms per day. During the direct examination of Hadfield at the hearing before the workers' compensation court, there was a brief dialog between the court and Hadfield's attorney seemingly aimed at determining whether Hadfield was claiming an acute, specific injury or a cumulative, repetitive injury:

> [Hadfield's counsel:] And do you have any idea what repetitive type of motion —
>
> THE COURT: . . . [Y]ou told me in opening statement there was —
>
> [Hadfield's counsel:] Well, this is actually a combination.
>
> THE COURT: This was an acute event that occurred on January 6th.
>
> [Hadfield's counsel:] All right. . . . Hadfield, prior to January 6th, 2012, had you ever missed work because of difficulties with your left upper extremity?

Following this exchange, Hadfield did present evidence regarding the repetitive nature of her work in connection with her claim of cumulative, repetitive trauma, as set forth above.

In its order of dismissal, the court summarized Hadfield's petition as alleging that "on or about January 16 [sic], 2011," Hadfield suffered injury to her left elbow when she squeezed a bottle of gel. The court did not refer to Hadfield's allegation that she suffered this injury after repetitively performing several sonograms per day. The order goes on to note that the employee health clinic's "medical record has no mention of the *acute* injury [Hadfield] stated she sustained on January 6, 2011, while squeezing a bottle of jell [sic] with her left hand." (Emphasis supplied.) Additionally, the court stated:

> Although a close question, the Court is more persuaded by the Employee Health record of January 18, 2011, . . . and the medical opinion of Dr. Wampler . . . rather than the other medical records and opinions in this case concerning causation with the finding that

[Hadfield] has failed to prove by a preponderance of the evidence that on January 6, 2011, [Hadfield] sustained an injury that occurred in the course and scope of her employment . . . .

Given the court's specific reference in its order of dismissal to whether Hadfield sustained an "acute" injury on a particular day in January 2011, the failure to specifically discuss whether Hadfield proved a cumulative, repetitive injury, and the court's questions of counsel during trial regarding this being an acute injury case, it is not clear from the order whether the compensation court properly considered the cumulative, repetitive trauma as pled in Hadfield's petition.

[7,8] We recognize that silence in an order on a request for relief not spoken to must be construed as a denial of such request. See *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 628, 707 N.W.2d 229 (2005). However, the Nebraska Supreme Court noted in *Dawes* that a trial judge's failure to discuss a specific request for relief may nonetheless constitute error requiring reversal or remand of the cause when the order does not comply with rule 11 by providing a basis for a meaningful appellate review.

[9] Rule 11 is designed to ensure that compensation court orders are sufficiently clear in addressing requests for relief in order that an appellate court can review the evidence relied upon by the trial judge in support of his or her findings. In *Owen v. American Hydraulics*, 254 Neb. 685, 696, 578 N.W.2d 57, 64 (1998), the Nebraska Supreme Court concluded that contradictory statements in the compensation court's order precluded meaningful appellate review because the order did not "clearly and unambiguously" state whether the employee satisfied the burden of proof or discuss the evidence relied upon in making its finding. In *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996), the court found that a general conclusion that the employee's evidence did not meet the burden of proving that the alleged injuries were caused by the employment lacked sufficient clarity for meaningful appellate review under rule 11.

[10] In *Armstrong v. Watkins Concrete Block*, 12 Neb. App. 729, 685 N.W.2d 495 (2004), the employee alleged both a specific injury date and cumulative trauma in his petition. The trial court found that pleading a specific injury date precluded consideration of cumulative trauma. As a result, there was no decision by the trial court on whether the employee proved that there had been a cumulative trauma. On appeal, this court concluded that the trial court erred in failing to consider the theory of cumulative trauma, and because there was no reasoned decision on the question of whether the claimant's injury was the result of cumulative trauma, we were unable to provide a meaningful appellate review on the issue. When a workers' compensation claimant pleads both specific injury and cumulative trauma as theories of recovery, the compensation court's order must address both theories in order to comply with rule 11. See *Armstrong, supra*.

In the present case, we cannot conclusively determine whether the compensation court considered cumulative trauma in its decision, despite Hadfield's having pled this theory for recovery and having attempted to adduce evidence at the hearing to support this theory. The trial court's order finds only that Hadfield failed to prove that she sustained an injury on January 6, 2011. While we could infer from the order's silence that the trial judge also concluded that Hadfield's injury was not the result of cumulative trauma, the order does not provide sufficient factual findings and a rationale on this issue to allow for a meaningful appellate review of this issue. Therefore, we reverse the compensation court's decision and remand the cause with directions to reconsider this matter on the record made to determine whether Hadfield has proved a cumulative trauma injury. No opinion is offered or suggested on what the outcome of that decision should be.

*Sufficiency of Evidence to Prove*
*Cumulative, Repetitive Trauma.*

Hadfield also argues that the compensation court erred in concluding the evidence in the record did not support recovery under a cumulative, repetitive trauma theory. She argues that while this issue was not specifically addressed by the

compensation court, the evidence in the record supports a finding that she suffered a cumulative, repetitive trauma injury in January 2011.

[11] Although we need not address this argument in order to resolve this case, we do note that this issue was not assigned as error in Hadfield's brief. Errors argued but not assigned will not be considered on appeal. *Sheperd v. Chambers*, 281 Neb. 57, 794 N.W.2d 678 (2011).

## CONCLUSION

We conclude that the compensation court's order of dismissal did not comply with rule 11(A), because it failed to clearly address whether it had considered Hadfield's injuries under a cumulative, repetitive trauma theory. Therefore, we reverse the judgment and remand the cause to the compensation court with directions to consider this matter under a cumulative, repetitive trauma theory.

REVERSED AND REMANDED WITH DIRECTIONS.