IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

WILDMAN V. GEORGE WITT SERVICE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

NICHOLAS WILDMAN, APPELLANT AND CROSS-APPELLEE,
V.
GEORGE WITT SERVICE, INC., AND MEADOWBROOK INSURANCE GROUP,
APPELLEES AND CROSS-APPELLANTS.

Filed November 4, 2014.    No. A-14-193.

Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Remanded for further proceedings.

Kathleen Koenig Rockey, of Copple, Rockey, McKeever & Schlecht, P.C., L.L.O., for appellant.

John W. Iliff, of Gross & Welch, P.C., L.L.O., for appellees.

MOORE, Chief Judge, and IRWIN and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Nicholas Wildman appeals an order of the Nebraska Workers' Compensation Court, and George Witt Service, Inc., and Meadowbrook Insurance Group (collectively George Witt) cross-appeals the order. Both parties assert on appeal, in part, that the order of the compensation court was not a reasoned decision compliant with Workers' Comp. Ct. R. of Proc. 11 (2011). We agree and remand for additional findings.

## II. BACKGROUND

The compensation court in this case issued a nine-page opinion, which includes a thorough review of the testimony and evidence adduced in this case. The following recitation of the factual background in this case mirrors that of the compensation court in large respects.

- 1 -

In July 2011, Wildman was employed at George Witt Service working in an automobile repair shop as a shop steward, setting up the customer lounge, cleaning, and transporting customers who left a vehicle to be worked on. Prior to the incident giving rise to this case, Wildman attended a safety meeting in which accident prevention rules were discussed. One of the rules was that "no one should walk behind any car that is backing up." Wildman testified that he had been informed at various times about safety rules prohibiting walking behind a backing vehicle.

The incident giving rise to this case occurred in late July 2011. Wildman testified that he was walking in the shop and was struck by a vehicle. He testified that he did not see any gear lights or hear the vehicle running prior to being struck by it. George Witt presented testimony indicating that Wildman asked to have the vehicle moved and subsequently stepped behind the vehicle after it began moving. One witness testified that Wildman "ran behind the vehicle." In its order, the compensation court concluded that Wildman "did not see the car start to move." Wildman was asked if he was fine and replied that he was not hurt. Wildman finished his job for the day and went home.

Wildman testified that 2 days later, he began experiencing severe pain in his lower back. George Witt took Wildman to see a chiropractor, a Dr. Ideus, who opined that Wildman could work, but should avoid heavy lifting and long periods of sitting. Two days later, Wildman requested a letter from Ideus excusing him from work; Ideus did not author such a letter.

Wildman was then seen by another doctor, a Dr. Durand. Wildman provided a history of the incident and his experience of pain to Durand. Durand prescribed medication, ordered physical therapy, and determined that Wildman should be taken off work. Durand followed up with Wildman a few days later and noted that Wildman had improved, but recommended he remain off work and continue physical therapy. Durand followed up again a few days later and noted that Wildman was approaching normal and recommended over-the-counter medication and exercise as tolerated.

Wildman was seen in followup visits by Durand at least twice in the following couple of weeks. Those visits included a CT scan of the lumbar spine, which revealed a transitional lumbosacral segment and a mild disk bulge without herniation or nerve root impingement. Durand recommended a referral to a specialist and released Wildman to work no more than 4 hours per day.

In September 2011, Wildman was seen by another doctor, a Dr. Diamant. Diamant's impression was that Wildman was suffering from subacute back pain, and he found the minimal disk bulge evident in the CT scan to be unremarkable. Diamant recommended 1 week of Prednisone, physical therapy, and a return to work at a light to medium physical demand capacity.

Wildman attended physical therapy, and several months later, he returned to see Diamant. Diamant concluded that Wildman had made progress, but had not had a resolution of his symptoms. Wildman had been unable to tolerate work because of back pain. Diamant recommended an MRI, which was performed in February 2013. The MRI revealed disk degeneration and a radial tear of the annulus. Diamant discussed options with Wildman, including surgical options. Diamant suggested continuing to treat the symptoms

pharmacologically. Diamant prescribed medication and recommended Wildman avoid snow removal and similar physical activities.

In March 2012, Diamant examined Wildman again. At that time, Wildman reported that he had not been able to tolerate the prescribed medication and Diamant recommended alternative prescriptions.

In May 2012, Diamant examined Wildman again. Diamant's impression was that Wildman suffered from chronic low-back pain and lumbar spondylosis. Diamant specifically noted that "in all likelihood this is discogenic pain, he is 25 years old, likely a disc abnormality at his age is exceedingly rare" and noted that he "suspect[ed] this is due to [Wildman's] work related event." Diamant also noted that the standard of care for treating "discogenic pain" is lumbar fusion.

Wildman received an injection in July 2011, but it did not provide significant relief. Diamant recommended "discography," which was performed in November. Based on the results of the "discogram," Diamant referred Wildman to the Nebraska Spine Center. Wildman, however, was seen at a different neuroscience clinic by Dr. Quentin Durward, in February 2013.

Durward examined Wildman and reviewed his medical records related to this incident, including the previous MRI. Durward noted that conservative treatments had been tried, unsuccessfully, to relieve Wildman's pain. Durward concluded that Wildman needed to "change his lifestyle" and concluded that it was not unreasonable to consider surgical treatment.

In the fall of 2012, Wildman began attending classes at a community college. He studied information technology, spent 3 to 8 hours per day in class, and also worked in the college's work study program in the IT department. At the time of the hearing, he was still enrolled in 18 hours of classes per week and was working part time doing sales at an electronic cigarette store.

Videotapes received by the court showed Wildman, in May and June 2013, pushing a lawnmower, bending and squatting, jacking up an automobile, using a weed eater, carrying a bucket, and washing a car. Diamant reviewed these videotapes in June and noted that "such activities are inconsistent with an individual with chronic debilitating low back pain" and concluded that, although Wildman may have complaints of "discogenic" back pain, "he is still quite functional despite such complaints." Diamant did not believe that surgery was indicated and opined that surgery presented a risk that Wildman would "feel worse and be less functional." Diamant concluded that Wildman could work at the medium or light-medium physical demand level. Diamant opined that Wildman had reached maximum medical improvement.

Wildman acknowledged in his testimony that he had, from time to time since the injury, engaged in activities such as pushing a lawnmower to mow his lawn. He testified that prior to the injury, he had been extremely active, and that he was bothered by being "stuck inside" with nothing to do, but that he still experienced extreme pain when engaging in such activities.

In August 2013, Wildman was examined by another doctor, Dr. D.M. Gammel. Gammel reviewed the prior medical records and videotapes. Based upon his examination of Wildman and the records, Gammel concluded that Wildman's condition was "very mild" degenerative disk disease and opined that its cause was "the human tendency to ambulate in an erect manner, history of competitive skateboarding, participation in sports and tobacco use together with the July 29, 2011, incident." Gammel opined that Wildman had reached maximum medical improvement on August 3, 2011, and concluded that the medical records failed to reveal

objective medical findings to substantiate Wildman's "excessive subjective complaints or the need for continued medical treatment." Gammel also specifically concluded that given Wildman's "young age" and the discrepancy between Wildman's complaints and the objective medical findings, "any thought of surgical intervention would most likely result in a poor outcome and is medically unwarranted."

George Witt also had another doctor, Dr. Michael T. O'Neil, review Wildman's medical records. O'Neil reviewed the medical records and the videotapes. O'Neil agreed with Diamant that Wildman's activity level was inconsistent with an individual with debilitating low-back pain, but disagreed with Diamant's opinion that the incidence of degenerative lumbar disk disease in young individuals with a transitional vertebra was extremely rare. O'Neil opined that Wildman had a congenital transitional vertebra with resulting degenerative disk disease and opined that the July 29, 2011, incident at George Witt Service did not cause degenerative changes. O'Neil opined that Wildman reached maximum medical improvement 30 days after the injury. O'Neil also specifically concluded that a fusion surgery is not indicated in this case.

In September 2013, Wildman was again examined by Durward. Durward noted that Wildman was engaged in studies to obtain a degree and that his pain was basically unchanged and was primarily central low-back pain. Durward disagreed with other medical opinions that Wildman had a transitional lumbosacral junction and opined that Wildman had consistent syndrome of pain onset with a work injury, unrelated to a transitional segment. Durward did not believe that Wildman's condition was in any way related to a congenital condition. Durward opined that the videotape evidence demonstrated "someone who is trying to lead as normal of a life as possible despite some significant disabling pain which has prevented him from doing his previous line of [physical] work." Durward continued to maintain that Wildman should receive surgical treatment.

George Witt also had another doctor, Dr. Richard Kutilek, review the prior MRI. Kutilek concluded that the MRI revealed "a transitional vertebral body with lumbarization." Kutilek opined that the MRI demonstrated "typical degenerative changes" and concluded that there were "no findings that would be deemed surgical."

Wildman filed a complaint in the compensation court, seeking benefits. Wildman also asserted that George Witt had stopped paying benefits and that there was no reasonable controversy; he requested penalties and attorney fees.

George Witt denied that Wildman was injured in an accident arising out of and in the course of employment and denied that Wildman was entitled to benefits. George Witt specifically asserted that Wildman had been willfully negligent and/or had violated safety regulations and rules.

When the parties appeared for the hearing in this case, Wildman submitted to the court that he was not prepared to litigate his entitlement to permanent disability benefits and that the issues before the court were related solely to his entitlement to temporary benefits beyond those initially paid by George Witt.

Based upon a review of the evidence submitted, the compensation court concluded that Wildman injured his lower back on July 29, 2011, when he was struck by a vehicle at George Witt Service.

The court denied Wildman's assertion that he needed surgery. The court noted Wildman's activity level, noted that fusion surgery results in stress on surrounding levels, and concluded that it is not in Wildman's best interests to have surgery. The court concluded that Wildman "obviously has a need for future medical care, especially conservative care for the treatment of the annulur tears."

The court concluded that Wildman had reached maximum medical improvement in September 2012. The court found that "[w]hen [Wildman] started school he took himself out of the workforce so temporary benefits ceased September 1, 2012." The court also noted that Wildman had worked part time while being a full-time student.

The court held that the issue of permanent benefits and vocational rehabilitation had not been submitted to the court. This was consistent with the parties' representation to the court at the beginning of the hearing that Wildman was not prepared to litigate the issue of permanent benefits.

With respect to Wildman's request for penalties and attorney fees, the court held that "from the evidence submitted at the time of trial it is impossible to determine the amount of any penalty and/or fees to [Wildman]." At the beginning of the hearing, the court had indicated to Wildman that he would need to demonstrate how any payments that he had received were late to demonstrate how he was entitled to penalties.

The court's order includes no findings about George Witt's assertion that Wildman's recovery should be barred because of willful negligence or disregard of safety regulations. In fact, the court's order makes no mention of George Witt's asserted defense.

This appeal and cross-appeal followed.

## III. ASSIGNMENTS OF ERROR

Among the assignments of error, Wildman asserts that the compensation court failed to present a reasoned decision explaining its rationale and identifying the evidence relied upon. On cross-appeal, George Witt similarly asserts that the compensation court's decision is not a reasoned decision.

## IV. ANALYSIS

Among Wildman's assertions on appeal is that the compensation court failed to provide a reasoned opinion consistent with rule 11(A) of the Workers' Compensation Court. Wildman asserts that the court attributed its conclusions to findings not supported by the evidence and failed to specify which of competing medical opinions were being relied upon to support its conclusions, particularly with respect to temporary benefits and maximum medical improvement and in denying Wildman's assertion that surgery was necessary. Wildman also asserts that the court's explanation of why it was denying penalties failed to comply with rule 11(A). Upon our review of the compensation court's decision in this case, we agree that it is not a reasoned decision consistent with rule 11(A).

Under Neb. Rev. Stat. § 48-185 (Reissue 2010), a judgment of the Workers' Compensation Court may be modified, reversed, or set aside based on the ground that there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013);

- 5 -

*Bolles v. Midwest Sheet Metal Co.*, 21 Neb. App. 822, 844 N.W.2d 336 (2014). Competent evidence means evidence that tends to establish the fact in issue. *Id.* In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, an appellate court will not disturb the findings of fact of the trial judge unless clearly wrong. *Bolles v. Midwest Sheet Metal Co., supra.* Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013).

Rule 11(A) was most recently amended effective August 31, 2011. The current version of rule 11(A) requires the Workers' Compensation Court to write decisions that "provide the basis for a meaningful appellate review." Accord *Bolles v. Midwest Sheet Metal Co., supra.* In particular, rule 11(A) requires the judge to "specify the evidence upon which the judge relies." Accord *Bolles v. Midwest Sheet Metal Co., supra.* Rule 11 is designed to ensure that compensation court orders are sufficiently clear in addressing requests for relief in order that an appellate court can review the evidence relied upon by the trial judge in support of his or her findings. *Hadfield v. Neb. Med. Ctr.*, 21 Neb. App. 20, 838 N.W.2d 310 (2013).

In this case, the primary issues before the compensation court included whether Wildman had reached maximum medical improvement and the extent of his entitlement to temporary benefits. In that respect, the record in this case contains several competing and conflicting expert medical opinions, as set forth more fully above in the factual background section.

Gammel opined that Wildman reached maximum medical improvement on August 3, 2011. O'Neil opined that Wildman reached maximum medical improvement 30 days after the July 29, 2011, accident, or on August 29, 2011. Diamant opined in June 2013 that Wildman had, by that time, reached maximum medical improvement. Durward disagreed and stated that Wildman had not reached maximum medical improvement.

The compensation court did not actually adopt any of the specific findings of any of these medical experts. Rather, the compensation court held that Wildman reached maximum medical improvement "in September 2012, when he started to go to school." The compensation court held that Wildman, by starting to attend school, "took himself out of the workforce so temporary benefits ceased September 1, 2012."

We are aware of no authority that would suggest a connection between seeking additional education and a legal finding of maximum medical improvement, and we are at a loss to understand the connection between the two. In fact, the compensation court also made a specific finding that Wildman "obviously has a need for future medical care, especially conservative care." Inasmuch as the court specifically noted that it was not making findings about permanent impairment, it is unclear whether this reference to needing future care was a recognition that additional treatment might further improve Wildman's condition and that he was simply not entitled to temporary benefits while attending school, or whether the reference to needing future care was intended to suggest that there might be permanent impairment.

Although the record contains medical evidence that would support the compensation court's ultimate conclusion that Wildman had reached maximum medical improvement, it is not apparent that the court based that conclusion on any of the medical evidence. If the court based its conclusion on the medical evidence, our review would be to determine if the decision was properly supported by that evidence. If the court based its conclusion on a legal conclusion that

enrolling in college courses amounts to a termination of the right to receive temporary disability and a necessary finding of maximum medical improvement, our review would be to determine if the court's legal conclusions were correct. We cannot determine what the compensation court was attempting to find, and the decision with respect to temporary benefits and maximum medical improvement does not comply with rule 11(A).

Wildman also sought the court's determination that he needed surgery to relieve his purported back condition. As noted in the factual background section above, the medical evidence in this case includes the opinions of several doctors concerning whether surgery is indicated in the present case, and those opinions vary from one another. Indeed, Wildman notes in his brief on appeal that "there are five separate medical doctors' opinions" and that "[t]he opinions of the physicians are quite varied in their approach to the proper treatment that . . . Wildman should undergo." Brief for appellant at 24.

Although Durward opined that surgery was indicated, the other doctors opined that it was not. Gammel opined that surgery was medically unwarranted. Kutilek opined that that there were no findings that he would deem surgical. O'Neil opined that a fusion is not indicated. It appears that Diamant initially opined that fusion was indicated, but after viewing the videotapes of Wildman engaging in physical activities opined that he would not recommend surgery. Durward opined that surgery was warranted.

Once again, there was conflicting medical evidence, and if the compensation court made a factual determination that one opinion was more credible or entitled to more weight than another, that opinion would be supported by the evidence in the record. However, the compensation court did not indicate that it was accepting any medical evidence adduced over other medical evidence adduced. Rather, the compensation court concluded that Wildman's "request for surgery is denied. [Wildman] is far too active to undergo a lumbar fusion at this time. Lumbar fusion results in stress on the levels above and below the fusion which leads to further fusions."

These findings of the compensation court regarding the basis for concluding that surgery is not indicated in this case do not appear to be based on the medical evidence adduced in this case. The compensation court did not indicate that this basis for declining surgery was espoused by any of the doctors in this case, and George Witt has not asserted on appeal that the basis is contained in the evidence presented. As such, it is not apparent to this court whether the compensation court based its conclusion on evidence presented, and the opinion does not comply with rule 11(A).

Finally, Wildman asserts that the compensation court failed to present a reasoned decision with regard to his request for penalties and attorney fees. We disagree.

Neb. Rev. Stat. § 48-125(2)(a) (Reissue 2010) authorizes attorney fees in workers' compensation cases where the employer refuses payment or neglects to pay medical payments. Section 48-125 authorizes penalties for delinquent payments.

At the hearing, Wildman's counsel indicated to the compensation court that "there were substantial delays in [Wildman's] getting paid." The court indicated that it needed Wildman's counsel to "write and tell [the court] X the box on which one of [the payments] were late." Counsel offered to submit that "post hearing." At the conclusion of the hearing, counsel

indicated that she needed "to submit some statement to [the court] concerning the penalty issue." It is not apparent to this court that any such information is in the record presented on appeal.

In its order, the compensation court denied attorney fees or penalties. In so doing, the court indicated that "from the evidence submitted at the time of the trial it is impossible to determine the amount of any penalty and/or fees to [Wildman]." This finding appears to be a conclusion that Wildman failed to demonstrate that any payments were not made in a timely manner, and based upon our reading of the exchanges between Wildman's counsel and the compensation court, that is how we understand the finding. That finding provides a sufficient basis for our review of the matter, and we agree with the compensation court that Wildman failed to demonstrate an entitlement to attorney fees or penalties on the basis of any delay in payment of benefits.

On cross-appeal, George Witt asserts that the compensation court further failed to render a reasoned decision under rule 11, because the court failed to provide a reasoned discussion of George Witt's assertion that Wildman's recovery should be barred because of his willful negligence and violation of safety rules and regulations. As noted above in the factual background section, the compensation court did not mention the defense anywhere in its order and rendered no ruling on the issue, despite George Witt's pleading the issue, arguing it to the court at the start of the hearing, presenting evidence concerning it, and arguing it again at the close of the hearing.

Silence in an order on a request for relief not spoken to must be construed as denial of such request. *Hadfield v. Neb. Med. Ctr.*, 21 Neb. App. 20, 838 N.W.2d 310 (2013). See *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005). However, the Nebraska Supreme Court noted in *Dawes* that a trial judge's failure to discuss a specific request for relief may nonetheless constitute error requiring reversal or remand of the cause when the order does not comply with rule 11 by providing a basis for a meaningful appellate review. *Hadfield v. Neb. Med. Ctr., supra.*

Neb. Rev. Stat. § 48-127 (Reissue 2010) provides that if the employee is injured by reason of his or her intentional willful negligence, neither he or she nor his or her beneficiaries shall receive compensation under the Nebraska Workers' Compensation Act. See *Estate of Coe v. Willmes Trucking*, 268 Neb. 880, 689 N.W.2d 318 (2004). "Willful negligence consists of (a) a deliberate act, (b) such conduct as evidences reckless indifference to safety, or (c) intoxication at the time of the injury, such intoxication being without the consent, knowledge, or acquiescence of the employer or the employer's agent." Neb. Rev. Stat. § 48-151(7) (Reissue 2010); *Estate of Coe v. Willmes Trucking, supra*. Reckless indifference to safety means more than lack of ordinary care and implies a rash and careless spirit, not necessarily amounting to wantonness, but approximating it in degree--a willingness to take a chance. *Estate of Coe v. Willmes Trucking, supra*. An employee's conduct must manifest a reckless disregard for the consequences coupled with a consciousness that injury will naturally or probably result. *Id.* Moreover, violation of a statute or regulation is evidence of willful negligence. *Id.*

An appellate court gives considerable deference to a trial judge's determination of whether particular conduct amounted to willful negligence. *Id.* If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an

appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id.*

In this case, George Witt asserted that Wildman should be denied any recovery on the basis of his having been willfully negligent and/or having violated known safety rules. George Witt pled the issue, presented evidence on the issue, and argued the issue to the compensation court. The compensation court failed to make any finding concerning the issue.

Although the compensation court's silence concerning this issue that was clearly raised must be construed as a denial of George Witt's request that Wildman be found to have been willfully negligent, there remains a problem with effective appellate review of the issue. Because the court never mentioned the issue in its decision, there is no way for us to determine whether the court actually concluded that George Witt failed to demonstrate willful negligence or whether the compensation court simply forgot to consider the issue at all. In workers' compensation cases, the court is obligated to present a decision from which we can ascertain its rulings and the basis therefor and effectively review them. We cannot do so with respect to this issue, and we find that it is a further example of the compensation court's failure to comply with rule 11(A).

## V. CONCLUSION

Although the compensation court presented a clear and thorough decision with respect to the evidence adduced at trial and the factual background of this case, the court's decision does not comply with rule 11(A) in important respects concerning the court's conclusions with respect to temporary benefits, maximum medical improvement, and the defense of willful negligence. The case is remanded to the compensation court to issue a reasoned decision that complies with rule 11(A) and this opinion.

REMANDED FOR FURTHER PROCEEDINGS.