IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

WALLING V. QWEST CORP.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAN WALLING, APPELLANT,

V.

QWEST CORPORATION AND XL SPECIALTY INSURANCE COMPANY, APPELLEES.

Filed April 20, 2021.    No. A-20-594.

Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

Steven H. Howard, of Steve Howard Law, P.C., L.L.O., for appellant.

Eric J. Pollart, of Pollart Miller, L.L.C., for appellees.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Dan Walling appeals the determination of the Nebraska Workers' Compensation Court dismissing his petition against Qwest Corporation and XL Specialty Insurance (Qwest) for workers' compensation benefits. The court found that Walling failed to prove his fall caused a compensable injury under the Nebraska Workers' Compensation Act. After considering Walling's assigned errors, we affirm.

### STATEMENT OF FACTS

Walling alleged he was injured on January 16, 2017, when he fell on ice while at work. The following day, he sought medical treatment from Michelle Poskevich, a nurse practitioner, who noted in a medical record that Walling hurt his back while at work. On January 24, Poskevich referred Walling to physical therapy. After Walling attended several physical therapy sessions, his physical therapist suggested an MRI and, on February 9, Poskevich recommended an MRI which

- 1 -

was completed on February 21. The MRI revealed a condition described as "multilevel bilateral neural foraminal stenosis most pronounced at L5-S1 left greater than right with compression of the exiting left L5 nerve root." Following the MRI, Poskevich referred Walling to Dr. John McClellan, a spine surgeon.

In late March 2017, Dr. McClellan reviewed Walling's MRI, placed lifting restrictions on Walling, referred him to physical therapy, and referred him to Dr. Jeremiah Ladd, a physiatrist for further assessment. In August, Dr. Ladd administered a lumbar epidural to Walling, after which Walling reported a 75 percent reduction in his pain. Subsequent to this office visit, Walling fell for a second time after he tripped over some concrete. Walling stated that his pain increased after this second fall. Dr. Ladd administered a second epidural in October, which Walling reported helped his discomfort significantly; however, Walling stated the pain returned three days later. On December 1, Dr. Ladd referred Walling for surgery.

In August 2018, Dr. McClellan recommended that Walling participate in an EMG study and undergo an MRI. The EMG demonstrated a "bilateral L5 nerve injury. It is moderate on the right, and mild-to-moderate on the left. The lumbar MRI scan demonstrate[d] severe nerve compression, L5 bilaterally, due to severe bilateral foraminal stenosis." In November, Dr. McClellan authored a letter to Walling's insurance carrier recommending that Walling undergo a fusion of the L4-5 and L5-S1 level to treat his persistent back and sciatic leg pain which Dr. McClellan noted was a result of Walling's work injury.

Dr. McClellan's March 2017 medical report indicated Walling sought treatment for pain in his right lower extremity and lower back explaining Walling fell against a concrete curb while at work which impacted mostly his lower back and pelvis. Dr. McClellan noted Walling had a weight lifting limitation of 30 pounds. Dr. McClellan's August 23, 2017, report stated Walling had "a history of a work-related injury in 1/16/17" but did not mention any previous back injuries sustained by Walling. One line in Dr. McClellan's medical records stated "past medical history reviewed," but his notes did not specify the content of the medical history he reviewed and did not indicate that Walling informed him of his preexisting back condition beginning in at least 2013 or otherwise suggest of the aggravation of a pre-existing condition.

Walling's history of treatment for back pain began years prior to his January 16, 2017, injury, having been treated for back pain since at least 2013. Medical records offered at trial demonstrated Walling was seen in February 2013 for acute back pain attributed to moving snow; in September 2013 on multiple occasions for management of acute back pain; in December 2014 from an incident where he fell on a patch of ice; in July 2016 for self-described "severe" pain which he stated was occurring "constantly" but for which he could not attribute a triggering cause; in December 2016 for an acute flare up of back pain; and on January 13, 2017, three days before the alleged incident, for a self-described slip and fall on ice in his driveway at home for which he also sought treatment from Poskevich who referred him for radiological studies of his back and physical therapy. Poskevich authored a letter on March 10, 2017, stating Walling's prior condition from his fall at home on January 8 "had mostly resolved by [the time of her] visit with him on January 13, 2017." Poskevich further explained Walling's fall at work on January 16 was "the contributing factor to his current condition" and was the reason she referred Walling to a spine specialist.

At Qwest's behest, Dr. David Diamant performed a medical exam on Walling on February 12, 2019. Following the exam, Dr. Diamant authored a report which stated that, in 2016, Walling had preexisting back pain without referral or radiation to the lower limbs and that Walling had engaged in physical therapy from July 22 to August 26 after which he was dismissed because his back pain had fully subsided. Dr. Diamant noted that after Walling's work accident, Walling experienced right back pain radiating to the right lateral hip, posterior thigh, and occasionally into the posterolateral calf and ankle. Dr. Diamant concluded Walling's injuries were a result of his work accident.

However, on February 22, 2019, Dr. Diamant added an addendum to his report explaining that he had changed his opinion regarding the cause of Walling's back pain:

[A]fter reviewing available medical records, I am inclined to change my opinion. It is clear that . . . Walling has a preexisting history of recurrent back pain. The confusing matter is that he had complaints of back pain when he presented to . . . Poskevich on 1-13-17, such pain was incurred when falling January 8. Then, on January 16, he fell once again. I cannot say to a reasonable degree of medical certainty that the events of 1-16-17 caused his current back pain, lumbar radiculopathy, possible SIJ dysfunction and his current clinical condition, as he was experiencing back pain over the preceding few weeks prior to 1/16/17. It is possible that such on 1/16/17 could have aggravated his preexisting condition, but I cannot say that to a reasonable degree of medical certainty. All I can say is it is possible.

My opinion is rendered to a reasonable degree of medical certainty based on review of the entirety of the medical record that was provided. I had known of back pain in 2016 based on the previous review of medical records. I asked . . . Walling if he had back issues between then and the date of [his fall] and he indicated that he did not. Based on the new records that were provided, it is evident that he did.

Dr. McClellan reviewed Dr. Diamant's assertions and in a questionnaire noted his disagreement therewith. Dr. McClellan explained that Dr. Diamant's "conclusion ignore[d] the bilateral nerve injuries that responded to our blocks."

In May 2019, Walling filed a petition against Qwest alleging he suffered a work-related injury when he slipped on ice and fell resulting in low back pain. Walling alleged the matters in dispute included disability benefits, medical expenses, future medical treatment, vocational rehabilitation, waiting penalty, costs, and attorney fees. Qwest denied the allegations that Walling's medical care was reasonable, necessary, or related to his fall at work.

Following a trial held in May 2020, the court outlined the previously mentioned facts concerning Walling's medical history and complaints of ongoing back pain since at least 2013 which included seeking medical treatment six times in 2013 alone. The court explained that prior to Walling's work accident, he sought medical treatment on December 22, 2016, for an acute flare-up of back pain. The court indicated that on January 13, 2017, Walling again sought medical treatment for ongoing back pain as a result of falling on ice in his driveway and landing on his buttocks. The court compared the reports authored by Drs. Diamant and McClellan and found Dr. Diamant's conclusion -- that Walling's back pain in 2019 was not caused by his fall at work -- was more persuasive because Dr. Diamant noted he had considered additional medical records containing Walling's prior complaints of preexisting back pain which occurred prior to his work

accident. Dr. Diamant's report observed Walling had a history of recurrent back pain, including back pain on January 13, 2017, a few days prior to Walling's fall at work, whereas Dr. McClellan's report did not comment on that issue. The court ultimately concluded that finding causation from Walling's fall at work was difficult based on the conflicting medical evidence. Accordingly, the court denied Walling's petition and dismissed the action. Walling has timely appealed.

ASSIGNMENTS OF ERROR

Walling assigns, restated and renumbered, that the court erred in (1) failing to supply a decision setting forth the basis for a meaningful review as required by Workers' Comp. Ct. R. of Proc. 11(A) (2011), (2) finding a defense examiner's opinion 2 years postaccident supported a factual finding that no on-the-job accident occurred 2 years prior, and (3) failing to make findings of fact under the appropriate aggravation of preexisting condition analysis and framework.

STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2020), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020). On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.*

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Frans v. Waldinger Corp.*, 306 Neb. 574, 946 N.W.2d 666 (2020).

ANALYSIS

RULE 11(A)

Walling first argues the trial court erred by entering an order that did not comply with Workers' Comp. Ct. R. of Proc. 11(A). Specifically, Walling argues that although it is clear the court found Walling was not entitled to compensable benefits occurring 2 years after the accident, "The Order is silent on how Dr. Diamant's opinion regarding Walling's status two years after the fact somehow allows the Court to ignore its obligation to decide about the prior care. Those failures leave this Court unable to perform a meaningful review." Brief for appellant at 15. In support of his argument, Walling cites to *Hadfield v. Nebraska Med. Ctr.*, 21 Neb. App. 20, 838 N.W.2d 310 (2013), for the proposition that a compensation court's general conclusion noting the employee's

evidence failed to meet the burden of proving the injuries were caused by a work-related accident lacks sufficient clarity for meaningful appellate review under rule 11. Walling argues the workers' compensation court's order here similarly lacks sufficient clarity governing compensability relating to periods prior to Dr. Diamant's opinion and therefore violate rule 11(A).

Workers' Comp. Ct. R. of Proc. 11(A) provides: "Decisions of the court shall provide the basis for a meaningful review. The judge shall specify the evidence upon which the judge relies."

The proposition Walling cites from *Hadfield* was based on circumstances found in *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996). In *Hale*, the workers' compensation court found that the claimant did not meet his burden of proving the sustained injury was caused by his employment. More specifically, the order stated, "'the evidence does not preponderate in favor of a finding for the plaintiff.'" *Hale*, 251 Neb. at 40, 554 N.W.2d at 426. On appeal, the Nebraska Supreme Court opined it could not meaningfully review the trial court's order because the trial court did not articulate what the claimant failed to prove. *Hale v. Standard Meat Co., supra*. Ultimately, the Nebraska Supreme Court vacated and remanded the cause with directions to the workers' compensation court to comply with the requirements of rule 11. *Hale v. Standard Meat Co., supra*.

Unlike *Hale*, the compensation court in the present action clearly stated and cited to the evidence it relied upon in making its findings. This case presents conflicting expert opinions as to whether Walling's postaccident injuries and pain complaints were caused by his January 16, 2017, fall at work. That presented an issue of causation for the court to decide. "A worker may recover under Nebraska's workers' compensation laws only for injuries caused by an accident or occupational disease. See Neb. Rev. Stat. § 48-101 (Reissue 2010)." *Hadfield v. Nebraska Med. Ctr.*, 21 Neb. App. at 25, 838 N.W.2d at 314. As to that issue, the trial court specifically found Dr. Diamant's opinion more persuasive than Dr. McClellan's opinion and in doing so, quoted a portion of Dr. Diamant's February 2019 medical report which set forth "I <u>cannot</u> say to a reasonable degree of medical certainty that the events of 1-16-17 caused [Walling's] current back pain, lumbar radiculopathy, possible SIJ dysfunction and his current clinical condition, as he was experiencing back pain over the preceding few weeks prior to 1/16/17." (Emphasis in original). The trial court further explained "Dr. McClellan makes no real comment on [Walling's] extensive preexisting complaints of back pain." The compensation court concluded the conflicting medical evidence made it difficult to find causation from Walling's fall at work. Walling appears to argue that because Dr. Diamant's opinions on causation could be read to apply only to Walling's conditions two years post-accident, that the trial court's erroneous consideration should somehow relate to rule 11(A). We disagree. Whether the trial court properly interpreted Dr. Diamant's opinion (which we address in the next section of the opinion) does not impact whether the court's order complied with rule 11(A). To comply with rule 11(A), the court was required to provide the basis for a meaningful review and specify the evidence upon which it relied.

Here, in reaching its conclusion that Walling did not suffer a work-related injury, the trial court specifically noted the evidence relied upon in making that determination. The trial court discussed Walling's extensive medical history regarding back issues, Walling's medical treatment after his fall at work, and the doctors' opinions about the causation of Walling's symptomology. The trial court articulated the differences between the competing doctors' expert opinions and the court's concern that Dr. McClellan did not indicate he considered Walling's extensive preexisting

complaints of back pain, including but not limited to, the injury sustained a week before the January 16, 2017, incident, in reaching his opinion on causation. The trial court found Dr. Diamant's consideration of Walling's preexisting back pain to be more persuasive in concluding that Walling's symptomology was not causally related to his fall at work. As a result, the court denied Walling's petition in its entirety, and dismissed the action. We find the court's order meets the requirements of Workers' Comp. Ct. R. of Proc. 11(A), and this assigned error fails.

RELIANCE ON DR. DIAMANT'S OPINION

Walling next argues that the court erred in relying on Dr. Diamant's opinion in support of its finding on causation. In connection with this assignment, Walling again directs our attention to the opinion of Dr. Diamant and argues that his opinion only supports a finding that Walling's medical condition and pain complaints existing two years after the January 16, 2017, incident were not related to the incident. He argues Dr. Diamant's opinion cannot be read to apply to Walling's injuries and condition existing prior to his report and analysis and that the other medical doctors' opinions within the 2-year period are not refuted. We read Walling's argument to state there was insufficient evidence to support the court's finding that there was no compensable injury suffered at all on January 16, 2017, and the court erred in dismissing the case in its entirety.

In connection with his opinion, Dr. Diamant specifically stated:

It is clear that . . . Walling has a preexisting history of recurrent back pain. The confusing matter is that he had complaints of back pain when he presented to . . . Poskevich on 1-13-17, such pain was incurred when falling January 8. Then, on January 16, he fell once again. I <u>cannot</u> say to a reasonable degree of medical certainty that the events of 1-16-17 caused his current back pain, lumbar radiculopathy, possible SIJ dysfunction and his current clinical condition, as he was experiencing back pain over the preceding few weeks prior to 1/16/17. It is possible that such on 1/16/17 could have aggravated his preexisting condition, but I cannot say that to a reasonable degree of medical certainty. All I can say is it is possible.

Walling asserts Dr. Diamant's opinion only suggests Walling's then-current conditions could not be related to the January 16, 2017, accident but that this testimony cannot be read to support an opinion as to causation for the 2-year period preceding this opinion. We disagree. Although Dr. Diamant does say in his opinion that "I <u>cannot</u> say to a reasonable degree of medical certainty that the events of 1-16-17 caused his <u>current</u> back pain, lumbar radiculopathy, possible SIJ dysfunction and his current clinical condition," Dr. Diamant later qualifies that remark by saying "as he was experiencing back pain over the preceding few weeks prior to 1/16/17." (Emphasis supplied.) As such, at least one possible interpretation of this opinion by Dr. Diamant is that Walling's entire condition for which he sought recovery preexisted the January 16, 2017, incident, which is what the trial court eventually concluded.

When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). The court, as the trier of fact and when presented with Walling's testimony along with comprehensive medical records, is in an optimal position to determine the credibility of expert and witness opinions. *Hynes v. Good Samaritan Hosp.*, 291

Neb. 757, 869 N.W.2d 78 (2015). On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be set aside unless clearly wrong. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020). In testing the sufficiency of the evidence to support findings of fact in a workers' compensation case, an appellate court considers the evidence in a light most favorable to the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

Applying that standard here, we find there is a reasonable inference deducible from the evidence that Dr. Diamant did opine that he could not, to a reasonable degree of medical certainty, relate any of Walling's complaints or injuries to the January 16, 2017, event. We further find that based upon this opinion and the other evidence outlined by the court in its order, we cannot say the court was clearly wrong in finding Walling failed to satisfy his burden of proof on the issue of causation. Stated differently, we hold the court did not clearly err in finding Walling failed to prove he sustained any new injury as a result of the January 16, 2017, incident. This assigned error fails.

PRE-EXISTING CONDITION

Walling finally assigns that the court abused its discretion in failing to make findings of fact under the appropriate aggravation of preexisting condition analysis and framework thereby departing from the court's obligation under rule 11(A). Walling specifically argues:

> The trial [c]ourt completely left out any referenced (sic) to the statute or caselaw regarding the concept of aggravation of a preexisting injury. It is the very lens through which the analysis should have started. Instead, the trial [c]ourt placed the incorrect burden on Walling to prove that all of his low back problems from day one were caused by the fall at work on January 16, 2017.

Brief for appellant at 23.

As we already discussed before, the court's order complied with the requirements of rule 11(A). That said, we interpret Walling's argument as suggesting that the evidence was insufficient to support the court's conclusion that his January 16, 2017, fall, did not, at a minimum, constitute an aggravation of Walling's preexisting condition. We will analyze Walling's assigned error on that basis.

"In a workers' compensation case involving a preexisting condition, the claimant must prove by a preponderance of evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability." *Swanson v. Park Place Automotive*, 267 Neb. 133, 138-39, 672 N.W.2d 405, 411 (2003). "Such claimant may recover when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that in the absence of the preexisting condition, no disability would have resulted." *Id.* at 139, 672 N.W.2d at 411-12. In short, "the lighting up or acceleration of preexisting conditions by accident is compensable." *Id.* at 139, 672 N.W.2d at 412. Further, if the evidence shows the accident is a contributing cause of the injury, a claimant is not required to prove an apportionment of symptoms to an accident: "'The law does not weigh the relative importance of the two causes, nor does it look for primary and secondary causes; it merely

- 7 -

inquires whether the employment was a contributing factor. If it was, the concurrence of the personal cause will not defeat compensability.'" *Damme v. Pike Enters.*, 289 Neb. 620, 631, 856 N.W.2d 422, 432-33 (2014).

Before applying that precedent here, we first note that Walling did not appear to plead or prove the January 16, 2017, incident aggravated a preexisting injury. In fact, in attempting to provide support for the proposition that Walling suffered a new injury on January 16, Walling offered a March 2017 medical report from Dr. McClellan which indicated Walling sought treatment for pain in his right lower extremity and lower back resulting from a fall against a concrete curb while at work which impacted mostly his lower back and pelvis. Dr. McClellan noted Walling had a weight lifting limitation of 30 pounds. A separate report from Dr. McClellan dated August 23, 2017, stated Walling has "a history of a work-related injury in 1/16/17" but does not mention any of Walling's previous injuries or any preexisting back condition. Although in one record Dr. McClellan makes general reference to "past medical history reviewed," his notes do not specify the contents of the reviewed medical history and do not indicate that Walling informed him of his preexisting back condition beginning in 2013. In short, Dr. McClellan's medical reports do not mention any aggravation of a preexisting condition and his opinion on causation related solely to the January 16, 2017, incident.

Additionally, when discussing Walling's preexisting medical status in Dr. Diamant's original February 12, 2019, report, Dr. Diamant stated, "Walling indicated that his only complaint previously was in 2016 and it resolved completely up until the time of the slip and fall in 2017." Based upon that history provided to him, Dr. Diamant originally concluded Walling's current symptomology was a result of his fall at work. However, after reviewing additional medical records spanning from November 2013 to March 2017, Dr. Diamant changed his opinion stating that, because of Walling's preexisting history of recurrent back pain, Dr. Diamant could not say to a reasonable degree of medial certainty that the work fall caused Walling's current symptomology. Dr. Diamant further opined "it is possible that such on 1/16/17 could have aggravated his preexisting condition, but I cannot say that to a reasonable degree of medical certainty. All I can say is it is possible."

As it relates then to the record supporting a theory of aggravation, that matter is contested. Dr. McClellan provided no opinion that this was an aggravation of a preexisting condition because he did not appear to know about any preexisting condition. Poskevich did provide such an opinion while suggesting in her March 10, 2017, letter that the January 16, 2017, fall at work was a "contributing factor to [Walling's] current condition" at least as of March 10, 2017. Dr. Diamant stated that whereas it was at least possible the January 16, 2017, fall contributed to his injury, he could not say so to a degree of reasonable certainty. Based upon that evidence and on review of the record, we again conclude that we cannot say the court was clearly wrong in holding Walling failed to satisfy his burden of showing the January 16, 2017, incident aggravated a preexisting condition. Accordingly, we affirm the compensation court's order dismissing Walling's petition in its entirety.

CONCLUSION

We conclude the compensation court correctly found Walling's work accident did not cause the injuries complained of and the court's order complied with the requirements of rule 11(A). Therefore, we affirm the order of the Workers' Compensation Court.

AFFIRMED.